ROGER WAYNE MIZE

v.

ROCKY MOUNT READY MIX, INC., et al.

No. 1191-89-3

Decided January 29, 1991

602

---

COUNSEL

F. Rodney Fitzpatrick, for appellant.

Richard D. Lucas (Woods, Rogers & Hazlegrove, on brief), for appellees.

OPINION

**COLEMAN, J.**—The claimant, Roger Wayne Mize, filed a motion to reopen his application for workers' compensation benefits, alleging that he obtained new and additional evidence after the deputy commissioner's hearing but before review by the commission. The commission, invoking Rule 2(C),[1] denied the motion. We hold that because the commission based its refusal to reopen on the misconception that the newly obtained evidence could form the basis for filing a new change of condition application, when in fact the issue raised in such application for a change in condition would become barred due to *res judicata*, the commission erred by denying the request to reopen. Accordingly, we reverse the commission and remand the claimant's change in condition application to the commission with directions that the claimant's evidence developed pending review by the full commission be received and considered.

The Industrial Commission denied Mize's application to reinstate benefits based on a change in condition because he had not shown that he suffered a disability which was caused by his industrial accident. The commission had, prior to Mize's application, granted the employer's application to terminate benefits based on a finding that Mize was able to return to his pre-injury employment because no objective medical evidence was offered to show that he suffered from a disability related to his industrial injury. Mize then filed a change of condition application to have the benefits reinstated based upon additional medical examinations and reports which he had obtained. The deputy commissioner denied Mize's application to reinstate benefits, finding that he failed to prove that he was disabled from performing his pre-injury employment. The deputy commissioner further ruled that, assuming that Mize was disabled, he had failed to prove that his disability was caused by his industrial accident. Mize appealed to the full com-

---

[1] RULE 2. REVIEW BY THE FULL COMMISSION.

C. *Additional Testimony.* No new evidence may be introduced by a party at the time of Review except upon agreement of the parties. Any petition for reopening of the case and taking of additional testimony will only be favorably acted upon by the Full Commission when it appears to the Commission that such course is *absolutely necessary* and *advisable* and also when the party requesting the same is able to conform to the rules prevailing in the courts of this State for the introduction of after-discovered evidence. A *petition to reopen* a case or to receive after-discovered evidence may be considered only upon *request for review.* (emphasis added).

mission for review. After the deputy's hearing, and pending commission review, Mize continued to be medically evaluated in an effort to ascertain the etiology, extent, and nature of his symptoms. During the time pending review, new medical evidence was developed which, if deemed credible and accepted by the fact finder, might have supported a finding that Mize had developed a disability which was, in fact, caused by his industrial accident. Mize had filed as part of his Application for Review a Petition to Reopen pursuant to Rule 2(C), asking that he be permitted to present the additional medical evidence which had been developed· pending the review and additional medical reports which one of the health care providers had failed to forward to the commission for the deputy's hearing. The commission denied the request to reopen, stated that the claimant could refile a new change of condition application based on his additional medical reports, and ruled that the evidence obtained pending review did not satisfy the "after-discovered" evidence requirements of Rule 2(C). Mize argues that the Industrial Commission, in refusing to reopen his case and receive the additional medical evidence which had been developed since the deputy's hearing, abused its discretion by disregarding Code § 65.1-97, which authorizes the commission "if deemed advisable," to rehear the claim and "to hear the parties at issue, their representatives and witnesses" when the first hearing was not held before the full commission. We agree with Mize that the commission's refusal to reopen his case under these circumstances in order to receive the additional medical evidence was an abuse of discretion because:

> A final judgment based on a determination by the commission on the issue of causation conclusively resolves the claim as to that particular injury. Thereafter, absent fraud or mistake, the doctrine of *res judicata* bars further litigation on that claim.

*AMP, Inc. v. Ruebush*, 10 Va. App. 270, 274, 391 S.E.2d 879, 881 (1990). We hold, therefore, that because the foregoing rule of law enunciated in *Ruebush* would bar the claimant from refiling and using the evidence obtained pending review to establish a change of condition, the Industrial Commission erred by refusing to reopen the case pursuant to Rule 2(C) in order to receive the material medical evidence and hear additional testimony that Mize's condition was disabling and was causally related to his in-

dustrial accident.[2] Mize sustained an industrial accident on February 5, 1988, when his loaded cement truck overturned down an embankment. As the truck rolled over, the cab was crushed against Mize, severely flexing his neck. Afterwards, Mize complained of extreme pain in his upper back, neck, and right arm. He came under the care of Dr. William Mirenda. The employer, Rocky Mount Ready Mix, Inc., and its carrier, Aetna Casualty and Surety Company, voluntarily accepted Mize's accident as compensable; an award was entered by the commission, and the carrier paid Mize temporary total disability benefits.

In addition to Mize's complaints of neck and shoulder pain, Dr. Mirenda noted that Mize suffered from muscle spasms and greatly reduced mobility in his neck and, most importantly, from muscle weakness and complete numbness in his right arm. However, Dr. Mirenda could not detect any anatomical damage or deficiency which might explain the symptoms in Mize's right arm. Consequently, Dr. Mirenda referred Mize to Drs. Sisk and Nolan for a neurological examination.

The neurologists observed the same symptomatology which Dr. Mirenda had noted, including complete anesthesia in Mize's right arm. However, neurological tests failed to reveal any pathological deficiency to account for Mize's symptoms. Unable to find an orthopedic or neurological explanation for Mize's condition, the physicians suspected that the problem was psychosomatic. Mize was referred to Dr. Daniel Owens, a clinical psychologist, for evaluation. Dr. Owens ruled out that Mize was malingering, but he, too, was unable to offer an adequate explanation for Mize's continued symptoms of pain and arm numbness.

Because Dr. Mirenda could find no medical basis for Mize's condition, he released Mize to return to work on June 27, 1988, to his pre-injury employment of driving and unloading cement trucks. Mize did not believe he was capable of performing these duties due to the dysfunction of his arm. The employer had available no other work suitable to Mize, so they terminated his employment.

---

[2] Because the *Ruebush* decision would preclude refiling of a change of condition application, that ruling provides the reason under Rule 2(C) to satisfy the requirements that the claim be reopened when "absolutely necessary and advisable."

After Mize refused to return to his pre-injury work, the employer applied to the commission to terminate Mize's compensation award, which the deputy commissioner did on September 9, 1988. The deputy commissioner, who relied upon Dr. Mirenda's recommendation that Mize could return to work, found that in the absence of a medical explanation for Mize's symptoms, his refusal to return to work was unreasonable. Mize appealed the termination of compensation to the full commission.

During the pendency of the appeal to the full commission, Dr. Mirenda, on the advice of other physicians, referred Mize on September 30, 1988 to the Department of Neurosurgery at the University of Virginia Health Sciences Center for further evaluation. Mize was hospitalized at the University of Virginia hospital between November 2 and 4, 1988, and was seen in consultation at the University's Pain Management Center during this time. Following his hospital admission, Mize filed a request with the commission to delay the review of his appeal of the termination decision because the ongoing medical evaluations were likely to produce new and material evidence establishing the cause of his symptoms, and that upon receipt of these medical reports he would petition to reopen his case under Industrial Commission Rule 2(C).

The full commission reviewed Mize's appeal of the termination of his benefits on November 21, 1988, at which time no new information with respect to the causation of his symptoms had been received. The commission in its opinion treated Mize's request to delay review as a motion to reopen the case and denied the motion, "advising the claimant that any new medical evidence is [an] appropriate basis for reopening the case on the ground of change in condition." The commission then affirmed the decision of the deputy commissioner, finding that "no medical basis for the complaints of continuing disability from the claimant's cervical injury" existed. Mize's request to delay review, which the commission treated as a motion to reopen the case, was referred by the commission to the hearing docket as a change in condition application.

Thereafter, the University of Virginia sent Mize's medical records to the commission. Mize's initial evaluation by Dr. John Jane at the University hospital's Department of Neurosurgery, and his initial examination at the Pain Management Center

(PMC) by Dr. Kenneth Ellington, a resident anesthesiologist, on referral by Dr. Jane, again failed to reveal a pathological explanation for Mize's symptoms. However, Dr. Ellington in his report identified for the first time that reflex sympathetic dystrophy was a consideration, a condition which he reported is a poorly understood trauma-induced neurological dysfunction. On December 19, 1988, Dr. Victor Lee, a staff physician of the PMC, stated by letter that Mize was under his care for myofascial pain syndrome of the neck and right shoulder and "atypical sensory loss of the right arm," and recommended a period of total disability from the date of the accident extending until May 1989. Mize continued to receive treatment and evaluation at the PMC following these initial evaluations.

On January 13, 1989, Dr. Lee provided as a "working diagnosis" that Mize was suffering from reflex sympathetic dystrophy in his right arm. Dr. Lee described Mize's condition as one that had been difficult to recognize, characterize and treat. Dr. Lee's prognosis was that at least seven months would be required for Mize's recovery from total disability. The same date, Dr. Mirenda stated by letter that, after reviewing the negative results of the earlier test evaluations administered by Dr. Jane, he still believed that Mize was capable of returning to work.

Mize's application to reinstate benefits based on a change in condition was submitted on the record and argued by counsel before the deputy commissioner on January 17, 1989. The deputy commissioner reviewed the medical reports of Drs. Jane, Ellington, Lee, and Mirenda, and incorporated by reference the commission's opinions of September 9, 1988 and November 21, 1988. Although Dr. Ellington was of the impression that Mize had suffered an accident related myofascial pain syndrome and an unexplained sensory loss in the right *arm* with reflex sympathetic dystrophy suspected "but not felt to be likely in the right *hand* at this time" (emphasis supplied), the deputy commissioner interpreted Dr. Ellington's report as being in conflict with Dr. Lee's diagnosis that Mize had dystrophy of his arm. The deputy commissioner also placed greater weight on Dr. Mirenda's report because he was Mize's treating physician. Thus, in light of the other medical opinions that no objective basis existed for Mize's condition or that none could be established, the deputy commissioner was unpersuaded by the most recent report of Dr. Lee that Mize suffered

from reflex sympathetic dystrophy as a result of his industrial accident. Therefore, the deputy commissioner found that Mize had failed to show that his disability was causally related to the accident. Mize appealed that decision to the full commission.

Prior to the deputy's hearing, Mize had requested that the University of Virginia hospital forward his medical records to the commission. However, the records of the PMC were omitted from the hospital records, a fact not discovered until after the deputy's hearing. In his appeal to the full commission, Mize requested oral argument and that his claim be reopened to receive additional testimony and the omitted record of Mize's treatment at the PMC.

Mize proffered the omitted PMC University hospital records as well as additional medical records which documented his condition and identified his symptoms as consistent with those of reflex sympathetic dystrophy. Chief among these symptoms, which the additional report explained for the first time had diagnostic significance, was a temperature differential between Mize's two arms. Dr. Lee, in his letter of February 27, 1989, which accompanied the requested medical records, noted:

the fact that on several . . . visits temperatures of Mr. Mize's arms an[d] hands are recorded, demonstrating a significant difference between the two extremities, and this to my thinking is the strongest data we have to document and support the diagnosis of sympathetic dystrophy, given that Mr. Mize's condition is a very difficult one to characterize.

A review of Dr. Mirenda's notes reveals that on July 12, 1988, Mize had previously complained of another symptom characteristic of reflex sympathetic dystrophy, sudden edema. However, no connection between the edema and reflex sympathetic dystrophy was made at that time.

The employer objected to the commission receiving additional medical evidence and continued to argue that the issue presented by the application for change in condition was *res judicata*: that is, because Mize had failed to prove causation when the employer had petitioned for termination of his benefits, Mize was barred on his application from establishing that his condition was a result of his work related accident. In reply, Mize argued that the delay in ascertaining the medical reason for his condition was due solely to

the nature of the injury which he had suffered, the diagnosis of which he had diligently pursued, and that a change in medical opinion, which occurred while his review application was pending, was a change in condition. Further, Mize argued, the ongoing nature of his treatment and evidence which emerged after the hearing satisfied the commission's requirements of Rule 2(C) that such course was "absolutely necessary and advisable" and met the after-discovered evidence requirements of Code § 65.1-97 for reopening the claim. Mize argued that he had been diligent in seeking and filing all the medical reports by requesting that the hospital submit to the commission Mize's complete medical records.

On May 11, 1989, the full commission reviewed Mize's case and his request to reopen to receive testimony concerning the diagnosis and his treatment at the PMC. The commission denied the request to reopen. Regarding the omission of Mize's PMC records at the deputy's hearing, the commission noted that no request had been made to the deputy commissioner at the time to keep the record open in order to submit additional medical evidence. In denying the request to hear additional witnesses as authorized by Code § 65.1-97, the commission did not differentiate between the PMC medical record which existed before the deputy's hearing from the medical record for treatment that occurred afterward. The commission ruled that the treatment information from PMC during and following November 1988, which had been omitted from the record, could not be considered after-discovered evidence pursuant to Industrial Commission Rule 2(C) for purposes of Mize's change of condition application. Regarding the evidence submitted to the commission for the record since the January 1989 hearing, the full commission found "that the evidence is not persuasive that the employee's condition has changed." The commission discounted the later diagnosis and treatment provided by Dr. Lee by stating that it was "based upon subjective complaints." Noting that only Dr. Lee had stated a contrary diagnosis, the full commission adopted and affirmed the opinion of the deputy commissioner. Mize filed this appeal.

Whether the Industrial Commission abused its discretion under Code § 65.1-97 by not hearing Mize's witnesses and receiving the additional medical evidence which had been developed after the deputy's hearing depends upon the consequence of the commission's refusal to consider that evidence. The first critical question

that must be addressed is whether the claimant's change of condition application placed in issue the causation of Mize's disability and, if so, whether his failure to prove causation would bar a second claim and effort to prove causation. The commission, when it denied Mize's request to reopen under Rule 2(C), held that its refusal to reopen did not prejudice the claimant from filing a second application in which he could submit the omitted PMC records and the medical evidence which had been developed after the deputy's hearing. The commission was following its established practice that change of condition applications could be initiated informally, *see Reese v. Wampler Foods, Inc.*, 222 Va. 249, 278 S.E.2d 870 (1981), could be initiated at the suggestion of either party or by the commission, and that the failure to submit adequate proof did not prejudice the parties from having the initial award reviewed by successive applications as proof became available to substantiate that a change had occurred.

If the commission was correct in its premise that, despite its ruling on this application, Mize could refile an application based on his newly obtained reports, then clearly its ruling not to reopen would not have been an abuse of discretion, since the claimant's right to refile and have his evidence considered would have been unaffected. If, however, the premise upon which the commission exercised its discretion was erroneous, that is, if, after an adverse ruling, the claimant could not refile in order to establish that he had become disabled as a consequence of the industrial injury, then the commission's refusal to reopen to receive evidence and hear his witnesses as envisioned by Code § 65.1-97 *may* have been an abuse of discretion, if the claimant otherwise satisfied the requirements of Rule 2(C). Clearly, the commission was of the view when it refused to reopen to receive the additional evidence that its decision would not be *res judicata* which would preclude him from initiating another review to determine whether additional evidence established that a change in condition had occurred.

The commission's previous termination of Mize's disability benefits based on the employer's application did not adjudicate that Mize suffered a disability which was not caused by his work related injury, even though the stated reason for the termination was an absence of medical explanation for Mize's condition. "With respect to such application [by an employer to terminate benefits], the only question is whether the employee's prior condi-

tion of work incapacity has changed; the question of causal connection is not an issue" unless the application specifically alleges. *King's Market v. Porter*, 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984)(construing *Mace v. Merchants Delivery*, 221 Va. 401, 270 S.E.2d 717 (1980) (per curiam)). In other words, the employer's application to terminate benefits only placed in issue Mize's capacity to work as a result of the accidental injury, even though he may have residual physical or mental impairment. Thus, an employer may prevail upon its application without foreclosing a claimant by the doctrine of *res judicata* from subsequently proving that his or her condition is disabling and that he or she is entitled to have compensation reinstated to some degree. On the other hand,

> when an employee files an application for reinstatement of disability benefits [based on a present condition of work incapacity], two questions arise: (1) has there been a change in the employee's capacity to work; (2) if so, is the change due to a condition causally connected with the injury originally compensated.

*King's Market*, 227 Va. at 483, 317 S.E.2d at 148. In order for Mize to prove a change of condition and to reinstate benefits, he had the burden of showing that he had again become disabled and that his disability was caused by his work related injury. Thus, when Mize filed his application, he placed in issue whether the numbness and weakness he was suffering in his right arm disabled him from performing his pre-injury employment and, if so, was the condition caused by his accidental injury.

Clearly, at the time of its ruling the Industrial Commission did not believe that its ruling would be *res judicata* and would prevent Mize from refiling if he obtained additional reports that established the nature of his condition and that it was disabling and caused by his industrial accident. However, subsequent to the commission's ruling and after oral argument in this case, a panel of the Court of Appeals in *AMP, Inc. v. Ruebush*, 10 Va. App. 270, 274, 391 S.E.2d 879, 881 (1990), held that a claimant is barred by *res judicata* from establishing that the condition which existed at the time of the prior change of condition application was, in fact, disabling or was caused by the accident when the basis for the application is evidence that previously was available

but not obtained until after the last hearing. The decision by the panel in *Ruebush* is binding upon this panel's decision. *Commonwealth v. Burns*, 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990).

The *Ruebush* opinion concluded that because an employee's change of condition application places in issue the questions of disability and causation, *Central Virginia Training Ctr. v. Martin*, 2 Va. App. 188, 192, 342 S.E.2d 652, 654 (1986), a decision adverse to the employee is *res judicata* as to whether the condition that was the subject of the application was caused by the industrial accident. The holding in *Ruebush* that an adverse ruling to an employee's change of condition application is *res judicata* represents a significant departure from the administrative approach by which the Industrial Commission had previously operated. Prior to the *Ruebush* decision, the commission had construed Code §§ 65.1-8 and 65.1-99, which deal with change of condition review, to provide for either the employer, the employee, or the commission on its own motion, to initiate informal administrative reviews in order to consider whether a change of condition had occurred that would either terminate or reinstate an award. The commission, prior to *Ruebush*, had construed the language of Code § 65.1-99 that "[u]pon its own motion or upon the application of any party in interest . . . the Industrial Commission *may* review any award and . . . make an award ending, diminishing or increasing the compensation previously awarded," to authorize the commission on its own motion to treat the most informal claim that benefits should be modified, terminated, or reinstated as an application for change of condition. Prior to *Ruebush*, the commission considered that an adverse decision in a change of condition review did not prejudice either the claimant or the employer from filing successive applications because the determination was not *res judicata*. Therefore, additional or new evidence, even though it may have been available or obtainable at the time of a prior hearing, could be used as the basis for a new change of condition application and showing.

■ This policy and approach by the commission, prior to *Ruebush*, was premised upon the theory that the issues of disability and causation had been adjudicated for purposes of *res judicata* when the original claim was first decided. Thereafter, the commission, in administering Code § 65.1-99, was conducting informal administrative reviews to determine whether a claimant

continued to be entitled to receive benefits, but such reviews did not involve a relitigation of a cause of action to which *res judicata* principles would apply. However, after *Ruebush*, it is clear that a holding adverse to a claimant in a change of condition hearing will be *res judicata* for the claimant to establish by evidence that was available or obtainable at the time that the condition was disabling or was caused by the industrial accident. If a claimant does not prevail on the issue whether the condition was disabling or was caused by the accidental injury, the claimant would be forever barred from proving that the specific disability was caused by the accidental injury or was a compensable consequence thereof.

Therefore, because the doctrine of *res judicata* bars any further attempt by Mize to prove that the numbness in his arm was a reflex sympathetic dystrophy which had been caused by his accidental injury, the commission at the time of its decision to disallow Mize to reopen his case or present additional witnesses based its ruling upon an incorrect assumption that Mize would not be prejudiced because he could merely refile an application and present the PMC reports and the evidence developed after the deputy's hearing to show a change in condition. In light of the *Ruebush* holding, we believe that had the commission known that Mize would be barred by *res judicata* if he refiled a subsequent change of condition and relied solely on the PMC reports and the medical evidence obtained pending review, the commission would have permitted Mize to introduce that evidence to the extent that its basic law and rules authorize it to do so. Code § 65.1-97 provides that upon a review by the commission where "the first hearing was not held before the full commission," the full commission "shall . . . if deemed advisable . . . hear the parties at issue, their representatives and *witnesses*." (emphasis added). However, pursuant to Code § 65.1-18, the commission has enacted Rule 2(C) of the Industrial Commission which states in pertinent part that:

[a]ny petition for the reopening of the case and taking of additional testimony will only be favorably acted upon by the Full Commission when it appears to the Commission that such course is absolutely necessary and advisable and also when the party requesting the same is able to conform to the rules prevailing in the courts of this State for the introduc-

tion of after-discovered evidence.[3]

■ We consider separately the commission's rulings which declined to receive and consider the PMC records which had been inadvertently omitted and the additional medical reports which had been developed pending appeal. Had the commission ruled not to hear additional evidence as to the PMC medical records which the University of Virginia hospital had inadvertently omitted from their record, the commission's ruling would have been within its discretion and conforming to Rule 2(C). Mize had proceeded to hearing under the mistaken belief that all medical records which were available and which had been requested had been filed with the commission. His later discovery after the deputy commissioner's hearing that certain medical records were omitted does not constitute a basis on which to reopen the claim to receive additional evidence. Failing to obtain the medical records which were available and known does not constitute due diligence. See Taylor v. Maritime Overseas Corp., 224 Va. 562, 567, 299 S.E.2d 340, 343 (1983); Stover v. Commonwealth, 211 Va. 789, 794, 180 S.E.2d 504, 508 (1971), cert. denied, 412 U.S. 953 (1973). Thus, regardless of whether, in light of Ruebush, it may have appeared "absolutely necessary and advisable" to consider the PMC records, it does not appear that they satisfied the rules for considering after-discovered evidence.

However, where, as here, pending the review hearing additional medical treatment has occurred which has resulted in a diagnosis being made or findings reported which are material to determining the nature and character of the claimant's condition, the extent of incapacity, or the etiology of any disability, the commission, as was demonstrated by the Ruebush decision, would be remiss in discharging its duty under Code § 65.1-97 by failing to reopen and receive and consider such evidence. Rule 2(C) requires the commission to do so when it appears "that such course is abso-

---

[3] In Rule 2(C) (formerly Rule 3), by which the commission adopted strict standards as to when it would consider new evidence on review, as the legislature directed that it do in Code § 65.1-97, it adopted narrow guidelines based upon the viewpoint that the rule would not prejudice successive reviews on the merits, but would only delay consideration and the date of resumption of benefits. The Ruebush decision may raise questions concerning the wisdom of the strict requirements of Rule 2(C) or consideration of legislation that permits successive informal review of alleged changes in condition without prejudicing the parties' rights.

lutely necessary and advisable" and the evidence meets the judicial standards for admission as after-discovered evidence.

According to the commission's opinion, it refused Mize's request to reopen and receive additional evidence, but nonetheless purportedly reviewed the additional medical records and physician's reports which were filed and concluded that even if it had reopened and considered the evidence, Mize had not met his burden of proving a change of condition—that he was disabled due to a condition caused by his accidental injury. The commission's ruling that it would not reopen the case in order to receive the additional medical evidence which had been developed, but that it had reviewed the partial medical evidence which had been submitted, had the effect of reopening the claim to receive some evidence, but foreclosing Mize from fully presenting his evidence. Moreover, the statement was gratuitous *dictum*. Furthermore, the commission's ruling which limited reopening of the claim was predicated upon its long held view, which is the policy upon which Rule 2(C) was promulgated, that evidence obtained after a deputy's hearing can be used to refile a change of condition application since an adverse ruling would not prejudice another review. However, according to *Ruebush*, the question of whether Mize's condition constitutes a compensable change caused by his injury will become *res judicata* if upheld and will preclude Mize from refiling and submitting testimony of Dr. Lee or other medical evidence in support of his claim. We hold that had the commission been aware that its refusal to reopen would forever preclude Mize from being able to present the evidence which was then available as to the character, nature, or cause of his condition, which result followed from the *Ruebush* holding,[4] that the commission might have concluded that reopening the claim and receiving the evidence was "absolutely necessary and advisable." Therefore, we reverse and remand the case to the Industrial Commission for further proceedings consistent with this opinion.

*Reversed and remanded.*

Duff, J., and Cole, J., concurred.

---

[4] We acknowledge and apply the *Ruebush* decision without reexamining the issues therein addressed. The *Ruebush* opinion was issued after briefing and oral argument; therefore, counsel did not consider or address it. By noting its impact upon the procedure which the commission followed, we express no view upon the *Ruebush* holding.