COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Willis and Elder
Argued at Richmond, Virginia


COLONNADES MARRIOTT SENIOR LIVING
and
CONTINENTAL INSURANCE COMPANY
                                   MEMORANDUM OPINION[*] BY
v.     Record No. 0761-97-2        JUDGE JERE M. H. WILLIS, JR.
                                        NOVEMBER 4, 1997
PRINCESS ELIZABETH DURDEN


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Roger L. Williams (Vasiliki Moudilos;
               Williams & Lynch, on brief), for appellants.

               Robert L. Flax for appellee.


     Colonnades Marriott Senior Living and Continental Insurance

Company (Colonnades) appeal from a decision of the Virginia

Workers' Compensation Commission granting temporary total

disability benefits to Princess Elizabeth Durden.  Colonnades

contends (1) that the commission erred in amending Durden's

average weekly wage, and (2) that no credible evidence supports

the commission's finding that Durden sustained a continuing

disability related to her original work-place injury.  We affirm

the commission's award.

                          I.  BACKGROUND

     On May 21, 1994, Durden, a registered nurse, injured her

right shoulder while moving a patient at Colonnades where she

worked on alternate weekends assisting patients with daily tasks

          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

and distributing medication, earning $134.08 per week. She also worked a full-time job at Region Ten Community Services (Region Ten), earning $310.76 per week. Her responsibilities at Region Ten included ordering supplies, distributing medicine and administering injections.

On May 4, 1995, Durden sought temporary total disability benefits from Colonnades. The parties stipulated that her average weekly wage was $134.08 and that she had sustained a work-related injury to her right shoulder on May 21, 1994. The deputy commissioner held that Durden had sustained a compensable injury and awarded her medical benefits. However, because Durden had missed only one day of work at Colonnades, the deputy commissioner denied wage benefits. See Code § 65.2-509. The deputy commissioner noted that:

> Although the claimant acknowledged she did not return to her employment at Colonnades following her work-related accident on May 21, 1994, she was not scheduled on May 23 and 24, 1994, and there is no claim that the employment at Region Ten is "similar,". . . to that which she was doing at Colonnades.

The pain in Durden's right shoulder continued. An August 12, 1994 patient record from Prompt Care noted that Durden had experienced a resurgence of pain in her right shoulder, after being free of pain for several weeks. A February 23, 1995 office report from The McKenzie Institute noted that Durden experienced soreness, culminating in pain, in her left and right shoulders. On March 6, 1995, Dr. S. Hughes Melton saw Durden for bilateral

shoulder pain and wrote that her medical "history is rather atypical and conflicting in nature." On March 21, 1995, he noted that Durden may have suffered from "sick building syndrome" and fibrositis. On May 8, 1995, Dr. Melton noted some improvement in Durden's shoulder pain.

A May 19, 1995 radiology report from the University of Virginia Health Sciences Center noted bilateral degenerative changes. In a letter to Cynthia Rathgeb, a claims analyst, Dr. Barbara S. True linked Durden's shoulder symptoms to degenerative arthritis.

On January 17, 1996, magnetic resonance imaging confirmed the presence of a small subacromial osteophyte, which "may cause impingement." On January 19, 1996, Dr. Donald A. DeGrange diagnosed impingement, noting in the record that Durden had injured her right shoulder two years previously in a work-place accident and had suffered intermittent pain which had increased over the previous twelve months.

On April 15, 1996, Durden underwent right shoulder arthroscopy with arthroscopic subacromial decompression and bursal debridement. Following the surgery, she received physical therapy, steroid injections and chiropractic treatment.

On May 6, 1996, Durden sought temporary total disability benefits due to a change in condition. She also sought amendment of her average weekly wage to include her earnings at both Colonnades and Region Ten. Pursuant to Durden's interrogatory

responses, the deputy commissioner limited the claim to a period of disability from April 15, 1996 through May 25, 1996.

Durden testified that she had injured her right shoulder in 1977 and in 1986. Dr. Clair Tansey reported in an office note following an October 23, 1986 visit that Durden experienced continuous numbness over her right shoulder and intermittent pain in her shoulder and fingers.

Following an ore tenus hearing, the deputy commissioner held on December 20, 1995 that Durden had sustained a continuing disability and awarded her temporary total disability benefits. He denied amendment of Durden's average weekly wage to include her income from Region Ten, concluding that:

> [L]ack of knowledge of the law is not a mutual mistake of fact. The opportunity was available to address the similarity of employments [at the December 14, 1995 hearing], and we do not find that because the request was not made such failure equates to either imposition or mutual mistake of fact.

On review, the full commission affirmed in part, finding that "the evidence sufficiently establishes disability related to the industrial injury." However, the commission reversed the deputy commissioner's refusal to amend the average weekly wage, deciding that: "neither the parties nor the Commission may have been aware that the claimant's wages at Region Ten could be relevant to an award of compensation benefits which constitutes a mutual mistake of fact." Determining that the two employments were "similar," the commission amended Durden's average weekly

wage to include her earnings at Region Ten.

## II.  AVERAGE WEEKLY WAGE

### A.

Colonnades contends that the commission erred in amending Durden's average weekly wage to include her earnings from Region Ten.  It argues that the December 20, 1995 award is a binding adjudication of the wage amount.

In pertinent part, "average weekly wage" means:  "[t]he earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, divided by fifty-two."  Code § 65.2-101(1)(a).  The determination of the average weekly wage is a question of fact to be determined by the commission, and that determination will not be disturbed on appeal unless it is unsupported by credible evidence.  See Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441-42, 339 S.E.2d 570, 573 (1986) (determining future average weekly wage question of fact).

The parties' stipulation to Durden's average weekly wage related to her earnings from Colonnades.  We have recognized the value of stipulations and have noted that they "'save both time and expense for the litigants and are to be encouraged and not condemned.'"  Avon Products v. Ross, 14 Va. App. 1, 9, 415 S.E.2d 225, 229 (1992) (quoting Harris v. Diamond Construction Co., 184 Va. 711, 724, 36 S.E.2d 573, 579 (1946)).

However:
> It seems to us that when the General Assembly

> established the Industrial Commission for the
> summary disposition of cases arising out of
> industrial accidents, it intended that that
> tribunal should have jurisdiction to do full
> and complete justice in each case. It
> granted to the Commission the power and the
> authority not only to make and enforce its
> awards, but to protect itself and its awards
> from fraud, imposition and mistake.

Harris, 184 Va. at 720, 36 S.E.2d at 577. Thus, while "[a]
compensation award is an adjudication of the entitlements and
obligations of the parties . . . [and as such] continues
according to its terms until it is modified or vacated," Rossello
v. K-Mart Corp., 15 Va. App. 333, 336, 423 S.E.2d 214, 216
(1992), the commission may vacate an award from which no party
sought timely appeal where the record discloses a mutual mistake
of fact. See Butler v. City of Virginia Beach, 22 Va. App. 601,
604, 471 S.E.2d 830, 832 (1996).

"In determining whether a mutual mistake of fact existed at
the time of the agreement, the inquiry is . . . whether each
party held the same mistaken belief with respect to a material
fact at the time the agreement was executed." Collins v.
Department of Alcohol Beverage Control, 21 Va. App. 671, 681, 467
S.E.2d 279, 283 (1996), aff'd, 22 Va. App. 625, 472 S.E.2d 287
(1996).

Durden and Colonnades agreed to an average weekly wage.
However, their stipulation contained a mutual misstatement of
fact insofar as it sought to establish Durden's total weekly
wage. "The reason for calculating the average weekly wage is to

approximate the _economic loss_ suffered by an employee . . . when there is a loss of earning capacity because of work-related injury." _Bosworth v. 7-Up Distributing Co._, 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987) (emphasis in original).

At the time of the first proceeding, only Durden's job with Colonnades and her earnings therefrom appeared relevant. Because she sought no compensation for lost work at Region Ten, the calculation of her economic loss excluded employment from which she suffered no loss of employment. The inference to be drawn from the stipulation is that the parties intended to determine only the wages relevant to that proceeding. Had the parties been aware that Durden would require surgery and would suffer loss of earnings from Region Ten, their considerations would have been different. _Cf._ _Mize v. Rocky Mount Ready Mix, Inc._, 11 Va. App. 601, 615, 401 S.E.2d 200, 208 (1991) (holding that had the commission been aware that its refusal to reopen the file would forever preclude presentation of evidence, it might have reopened the claim). Thus, the evidence supports the commission's finding that a mutual mistake of fact existed at the time the parties agreed to the stipulation.

B.

Colonnades contends also that Durden's employment at Colonnades and Region Ten was dissimilar. Thus, Colonnades argues that Durden's earnings from both employments may not be aggregated in calculating the average weekly wage. "The

'dissimilar employment rule,' an interpretive rule adopted by the commission, excludes wages earned in concurrent dissimilar employment from an employee's 'average weekly wages.'"  City of Fairfax v. Massey, 11 Va. App. 238, 239-40, 397 S.E.2d 679, 680 (1990) (citing Hudson v. Arthur Treachers, 2 Va. App. 323, 326, 343 S.E.2d 97, 99 (1986)).

The commission found that Durden "utilizes essentially the same nursing skills at both Colonnades and Region Ten, therefore, the employments are similar."  Durden testified that she provided patient care, distributed medications, administered insulin injections and performed chart work at Colonnades.  At Region Ten, she ordered supplies, distributed medications and administered injections.  Occasionally, she would assist a patient from the clinic to a chair.

The findings of the commission, if based upon credible evidence, are conclusive and binding upon this Court.  Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).  Credible evidence supports the commission's finding that Durden's employment at Colonnades and her employment at Region Ten were similar.

### III.  CHANGE IN CONDITION

Colonnades contends that the commission erred in granting Durden's application for a change in condition.  Colonnades argues that no credible evidence supports the commission's finding that Durden's disability is related to her work-place

injury.

On appeal, we view the evidence in the light most favorable to the party prevailing below. Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). "Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). See Code § 65.2-706. "The fact that contrary evidence may be in the record is of no consequence if there is credible evidence to support the Commission's findings." Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986).

The evidence revealed that Durden suffered a work-place injury. As a result, she began experiencing steadily increasing pain in her right shoulder. While she suffered pain in her left shoulder also, Durden attributed that pain to her inability to use her right arm. Following a number of treatment strategies and diagnoses, magnetic resonance imaging displayed a bone impingement. The diagnosis of impingement syndrome was based upon a medical history that included Durden's work-place injury.

The commission's finding that the evidence established a causal relationship between Durden's current disability and her work-place injury is supported by credible evidence. The commission reviewed the evidence thoroughly. It interpreted the medical records and Durden's testimony to support her assertion

that she had suffered a change in physical condition caused by her work-place injury.  Specifically, the commission found that:

"The medical reports contain a consistent history of injury and

corroborate the claimant's testimony regarding persistent right shoulder pain since the accident which necessitated surgery."

The award of the commission is affirmed.

<u>Affirmed.</u>