## Richmond

KING'S MARKET, ET AL.

V.

ANNA R. PORTER

Record No. 830790

June 15, 1984.

Present: All the Justices.

*Mosby G. Perrow, III (Caskie, Frost, Hobbs, Thompson, Knakal & Alford,* on brief), for appellants.

*Robert E. Tinsley, Jr. (Tinsley & Tinsley,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

The sole question presented by this employer's appeal from a worker's compensation award is whether the Industrial Commission erred in finding that the employee had borne the burden of proof to establish a compensable change in condition.

On April 29, 1979, Mrs. Anna R. Porter was injured in an accident which arose out of and during the course of her employment with King's Market. Her injury was diagnosed as "[l]umbo-thoracic spinal strain with nerve root irritation" resulting in "[i]ntercostal neuralgia, [b]rachial neuralgia". King's insurance carrier, Pacific Employer's Insurance Company, paid Mrs. Porter compensation until May 13, 1979 when she returned to work. This was the first of four periods for which temporary disability compensation was paid pursuant to a Memorandum of Agreement approved by the Commission.

In October 1979, Mrs. Porter consulted Dr. James Foster, an orthopedist, who found "[c]hronic sprain of neck, lumbar spine, and dorsal spine". The printed medical report form published by the Commission provides spaces for the attending physician to indicate whether his patient suffers "Disability for Work" and, if so, the "Date Disability Began", "Date Able to Return to Light Work", and ."Date Able to Return to Regular Work". Dr. Foster's report left these spaces blank.

In December following Dr. Foster's examination, Dr. Jacques Botton, a neurosurgeon, performed an anterior cervical fusion to relieve neck pain. A neurological examination conducted in March 1980 showed that Mrs. Porter had "some residual discomfort

across her right scapular". Dr. Botton advised that she could return to work "any time" but, because she was experiencing "a certain amount of low back pain which she has had since the injury", she should consult Dr. William Frank, an orthopedist, "before she returns to work". Mrs. Porter was paid compensation from December 3, 1979 until she returned to work March 24, 1980.

Payment of compensation was resumed for the third time in May 1980. A letter from Dr. Botton concerning an examination conducted in July of that year reported that Mrs. Porter was "doing fairly well except for some complaints of pain across her right shoulder." Compensation was terminated in October 1980 when Mrs. Porter returned to work.

The last period of compensation began April 28, 1981 and ended July 13, 1981. During that period, Mrs. Porter was examined by Dr. Foster and Dr. Frank. Dr. Foster found that Mrs. Porter was "[s]till having neck and shoulder pain" which he attributed to the industrial accident. A prescription pad signed by Dr. Frank noted that Mrs. Porter had undergone a "cervical fusion", and that "[s]he'll . . . live with pain." Both Dr. Foster and Dr. Frank left the work-capacity spaces on the medical report form blank.

With Dr. Frank's consent, Mrs. Porter returned to work July 13, 1981, the last date for which compensation was paid. Later that day, she consulted Dr. James Massie complaining of "Back Right Shoulder and Right Hip Pain". The diagnosis listed on the form filed by Dr. Massie was "Pain ? Etiology"; the work-capacity spaces were blank. Mrs. Porter did not report for work the next day, and during the months of July, August, and September, she worked only 10 hours per week. So far as the record discloses, she has not worked since September 1981.

In July 1982, Mrs. Porter, alleging a change in condition, applied for a hearing and reinstatement of compensation, and the deputy commissioner considered medical evidence submitted since the last payment of disability benefits. In a letter relating to an examination conducted July 16, 1981, Dr. Frank reported that Mrs. Porter "complained of severe back and neck pain", that the examination "disclosed a good range of motion of the lumbar and cervical spine", that "[n]eurological examination was totally normal", and that he had advised his patient to return to Dr. Botton for "follow up care and treatment." In July and August of that year, Mrs. Porter consulted Dr. Botton and his associate Dr. G. A.

Hurt, concerning pain in her right shoulder and arm. Both concluded that there had been no neurological change and left the work-capacity spaces in the medical report form blank.

Reviewing this evidence and finding "no medical basis to sustain [the claimant's] position as to work incapacity", the deputy commissioner denied the application.

In December 1982, Mrs. Porter filed a second change-in-condition claim and submitted a letter dated October 12, 1982 in which Dr. Frank stated:

> Ms. Porter has severe degenerative changes in her cervical spine. A cervical fusion has been tried in the past which was unsuccessful. The patient has many subjective complaints of pain, which I believe to be real. She has a normal neurological examination.
>
> I have given Ms. Porter a no work slip, to excuse her from same. I have rated Ms. Porter as having 15% disability to her cervical spine.

The "no work slip", dated October 4, 1982, was based upon a diagnosis of "cervical arthritis". A second letter from Dr. Frank, dated four days before the hearing, reported that, in light of the results of an examination conducted January 11, 1983, Mrs. Porter "continues on a no work status." The deputy commissioner ruled that "work incapacity commenced, according to medical documentation, on October 4, 1982" and entered an award reinstating compensation effective that date. Upon review of the record, the full Commission affirmed the deputy commissioner's award.

Appealing from this award, the employer challenges the sufficiency of the employee's evidence to prove causal connection between the industrial accident and work incapacity. The full Commission ruled that "it is no longer necessary that the claimant establish an actual pathological or physical change in his condition but can prevail on an application where it is established by a preponderance of the evidence that the attending physician has had a change in his opinion concerning the employee's work capacity." Applying that rule, the Commission based its decision upon the evidence that Dr. Frank had changed his opinion concerning Mrs. Porter's work capacity in October 1982.

■ The Commission relied upon our opinion in a recent case. Construing an amendment to the statutory definition of the term "change in condition", we held that "a change in an attending physician's opinion concerning an employee's ability to resume work meets the criteria detailed in Code § 65.1-8 [as amended]."* *Mace* v. *Merchants Delivery*, 221 Va. 401, 405, 270 S.E.2d 717, 719-20 (1980). This holding, however, did not alter the basic rule that an employee claiming reinstatement of disability benefits on account of a change in condition bears the burden of proving "that his present condition resulted naturally and unavoidably from the accident". *Old Dominion Co.* v. *Messick*, 149 Va. 330, 335, 141 S.E. 132, 133 (1928). Our opinion in *Mace* recognizes that capacity to work is a "condition". If the attending physician, reversing his former opinion, determines there has been a change in that condition sufficient to justify reinstatement of disability benefits, the inquiry is whether that change is causally connected with an injury suffered in an industrial accident. Absent proof of such connection, the change in condition is not compensable.

The Commission's misconstruction of *Mace* results from its failure to distinguish between an employer's application for termination of disability benefits and an employee's application for reinstatement of disability benefits. *Mace* involved an employer's application for termination of benefits based upon a change in condition. With respect to such application, the only question is whether the employee's prior condition of work incapacity has changed; the question of causal connection is not an issue. On the other hand, when an employee files an application for reinstatement of disability benefits, two questions arise: (1) has there been a change in the employee's capacity to work; (2) if so, is the change due to a condition causally connected with the injury originally compensated.

In October 1982, more than three years after Mrs. Porter's accident and nearly 15 months after the last payment of disability benefits, Dr. Frank found that she was suffering with "cervical arthritis" and "degenerative changes in her cervical spine" and that she was no longer able to work. There is nothing in his medical reports or elsewhere in the record, however, which establishes

---

* § **65.1-8. "Change in condition" defined.** — Change in condition as used in this Act means a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded or terminated which would affect the right to, amount of, or duration of compensation.

a causal connection between the disability resulting from these conditions and the April 1979 injury. As the employer points out and the medical treatises confirm, these conditions may develop from causes other than injury, such as infection, deficiency in the blood supply, excessive function, or the natural wear and tear associated with the aging process.

■ Proof of the causal connection between the industrial accident and the disabling condition underlying the employee's application must go beyond the realm of conjecture. If it is just as likely that the disabling condition resulted from a cause which is not compensable as it is that it resulted from an accident covered by the Workers' Compensation Act, the employee has failed to establish the requisite causal connection. *Carter* v. *Hercules Powder Co.,* 182 Va. 282, 288, 28 S.E.2d 736, 738 (1944). "Possibility is not enough." *Rust Engineering Co.* v. *Ramsey*, 194 Va. 975, 979, 76 S.E.2d 195, 198 (1953) (alleged causal connection between heavy lifting and cerebral hemorrhage). Evidence that disability " 'may be due' " to an industrial accident "is not sufficient." *Old Dominion Co.* at 337, 141 S.E. at 134 (alleged causal connection between injury to a hand and palsy). *See also Eccon Company* v. *Lucas*, 221 Va. 786, 273 S.E.2d 797 (1981) (alleged causal connection between injury to leg and cardiac arrest).

■ We hold that the Commission erred in its interpretation of the effect of our decision in *Mace*, and because the record is devoid of evidence establishing a causal connection between the April 1979 injury and the work incapacity resulting from the conditions diagnosed in October 1982, we will reverse the award and dismiss the application for reinstatement of compensation.

*Reversed and dismissed.*