COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


PHILIP MORRIS USA and
 TWIN CITY FIRE INSURANCE COMPANY

MEMORANDUM OPINION[*] BY
v.        Record No. 0832-96-2        JUDGE SAM W. COLEMAN III
                                      JANUARY 21, 1997
CARLA RENE MARSHALL


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          J. Mark DeBord (Hunton & Williams, on
          briefs), for appellant.

          Louis D. Snesil (Laura L. Geller; McDonald &
          Snesil, on brief), for appellee.


     Philip Morris USA and Twin City Fire Insurance Company, the

employer, appeal the Workers' Compensation Commission's award to

Carla Rene Marshall, the claimant, of temporary total and

permanent partial disability benefits based upon her change in

condition application pursuant to Code § 65.2-708.  Philip Morris

contends that the commission erred by (1) revisiting and

reconsidering its November 1992 award and agreed statement of

fact holding that the claimant was not disabled and could return

to work in September 1992, (2) reversing the deputy

commissioner's finding that the claimant had failed to meet her

burden of proof that she was disabled as a result of her injury,

(3) reversing the deputy commissioner's determination that the

claimant was not entitled to permanent partial disability

          [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

benefits, and (4) awarding benefits after finding that the claimant abandoned her designated treating physician. We hold that the November 1992 agreed statement of fact and award finding that the claimant could return to her pre-injury employment did not preclude her from claiming and proving a change of condition. We further hold that the evidence is sufficient to support the commission's finding of a change in condition and that the claimant was disabled and entitled to temporary total and permanent partial disability benefits. Accordingly, we affirm the commission's decision.

On August 28, 1992, the claimant, who worked as a press operator, was injured when the press fell on her right hand. The employer accepted the injury as compensable, and the parties entered into a Memorandum of Agreement for payment of temporary total disability compensation beginning September 5, 1992. In the Agreement, the parties identified the injury as a "contusion to finger." The parties then executed an Agreed Statement of Fact in which the claimant stated that she was able to return to her pre-injury work on September 8, 1992. The commission approved the Memorandum of Agreement and entered an award granting temporary total disability benefits from September 5, 1992 through September 7, 1992. Neither party appealed the award.

On July 13, 1994, the claimant filed an application alleging a change in condition and requested both temporary total and

permanent partial disability benefits.  At the hearing, the employer defended on the grounds that the evidence showed neither a temporary total disability nor a permanent partial disability and that the claimant had abandoned her treating physician which disqualified her for benefits.

The evidence showed that immediately after the accident the claimant saw Dr. Claiborne Irby who diagnosed her injury as a contusion of the right hand.  After Dr. Irby reviewed the claimant's job description and talked with her, Dr. Irby released the claimant to go back to work on September 7, 1992. Dissatisfied with Dr. Irby's treatment and evaluation, the claimant requested that Philip Morris refer her to another doctor, and she was referred to Dr. Stephen Leibovic, who saw the claimant on September 25, 1992.  Dr. Leibovic found that the claimant had a positive Tinel's sign in her right forearm that was absent in the left.  Dr. Leibovic's office notes stated:

> I believe that Ms. Marshall has mild carpal tunnel syndrome bilaterally, the right somewhat worse than the left.  In fact, probably what happened is that she may have had predisposition to this condition, as indicated by the mild involvement on the left, and the injury may have exacerbated it.

Dr. Leibovic was of the opinion that the claimant's carpal tunnel syndrome was related to her accidental injury, but that she was not disabled from performing her pre-injury occupation.  However, he did impose a zero to fifty pound lifting restriction and advised against repetitive movements.

In June 1994, the claimant saw Dr. Charles Bonner to obtain an evaluation of permanent impairment.  Dr. Bonner's report stated:

> Based on the patient's complaint of pain and discomfort in the upper extremity associated with the history of decreased activities of daily living and avocational activities and sleep and on the review of medical records from Dr. Leibovic documenting carpal tunnel syndrome it is my conclusion this patient has a 15% permanent partial impairment of the upper extremity due to the traumatic carpal tunnel syndrome.

In a letter to claimant's counsel on May 31, 1995, Dr. Bonner stated that the claimant's carpal tunnel syndrome was caused by the traumatic injury on August 28, 1992.

At the deputy commissioner's hearing, the claimant testified that after the accident, she went to Philip Morris' medical department and, without being offered a panel of physicians, she was referred to Dr. Irby.  After seeing Dr. Irby, she requested a second opinion and the employer sent her to Dr. Leibovic, whom she saw one time.  The claimant testified that she did not see Dr. Leibovic again because she was told by Philip Morris' director of occupational health services, Dr. Constance Hanna, that Philip Morris would not pay for further treatment by Dr. Leibovic.  Dr. Hanna testified by deposition that the claimant was offered a panel of physicians by Philip Morris' nurse and that the claimant chose Dr. Irby.  Dr. Hanna also testified that she never told the claimant that Philip Morris would not pay her workers' compensation benefits.

- 4 -

The claimant testified that she returned to work on September 8, 1992, but, after attempting to do so, was not able to perform her job duties due to her injury. She stated that she could only use one of her hands and that she could not keep up with her work so her supervisor,

> would put me in a room by myself and make me stay in that room during the whole entire shift. Sometimes they would come in and make me go back out on the floor to try to do the job, and then when I couldn't do it they would put me back in the room again, and they would make me stay in the room during the whole entire shift, the office.

Philip Morris discharged the claimant in November 1992 because, according to the claimant, "they said they didn't have any work for me to do, they didn't have a job for me." The employer presented no evidence concerning the claimant's discharge.

The deputy commissioner found that the claimant failed to prove a change in condition and denied the claims for temporary total and permanent partial disability. Specifically, the deputy held that the claimant did not prove that her disability was causally related to her accidental injury, or that she had reached maximum medical improvement, or that she had a permanent disability. The deputy based his holding, in part, upon the factual findings that the claimant failed to prove her light duty restrictions prevented her from doing her pre-injury work, that Dr. Leibovic's report was "conflicting and ambiguous," and that Dr. Bonner failed to explain a basis for his opinion that the carpal tunnel syndrome was traumatic in origin. Thus, the

claimant failed to prove a causal relation between her disability and the accidental injury. Furthermore, the deputy held that Dr. Leibovic was the claimant's treating physician and that treatment by Dr. Bonner was unauthorized.

The full commission reversed the deputy commissioner's decision and awarded benefits based upon a finding that the claimant proved a change in condition. The commission found that, due to the claimant's traumatic carpal tunnel syndrome, she was unable to perform her pre-injury job and that her attempt and subsequent inability to do the work were better evidence of her disability than the medical opinions stating that she could return to work. The commission also held that the claimant was entitled to permanent partial disability based upon Dr. Bonner's finding that she had a 15% permanent disability in her right hand as a result of carpal tunnel syndrome caused by her August 28, 1992 injury by accident. Although the claimant was only partially disabled, the commission held that she was entitled to temporary total disability benefits because as a partially disabled employee, she had been terminated and had made a reasonable, but unsuccessful, effort to market her residual capacity.

As to the employer's responsibility for claimant's medical treatment between September 1992 and June 1994, the commission found that Philip Morris told the claimant they would no longer pay for her to see a doctor. The commission found that the

claimant's testimony on this issue was unrebutted. However, the record reflects that, in Dr. Hanna's deposition, she denied making this statement to the claimant. Thus, the evidence to support the factual finding was not unrebutted. Additionally, the commission found that the claimant's testimony that she was not offered a panel of physicians was unrebutted. Again, the record shows that Dr. Hanna, based upon her review of claimant's medical records, testified that the claimant had been offered a panel of physicians by Philip Morris' nurse, and the claimant chose Dr. Irby. The employer urges this Court to reverse the commission's decision based, in part, on the commission's erroneous finding that certain facts were unrebutted. Although the basis for these factual findings may have been erroneous, these facts have no relevance to the questions presented, namely whether the claimant proved a change in condition or whether the claimant abandoned her medical treatment.

### NOVEMBER 1992 AWARD

The employer contends that the Memorandum of Agreement, Agreed Statement of Fact, and the November 1992 award precluded the commission from reconsidering and deciding whether the claimant was able to perform her pre-injury work. The employer argues that the claimant agreed and the award found that the claimant could return to her pre-injury work in September 1992 and that, other than the claimant changing her mind, no medical evidence proved a change of condition. The employer also argues

that the prior award and underlying facts which found that claimant could return to her pre-injury employment could not be reviewed except on the grounds of fraud or mutual mistake.

"The commission's approval of a memorandum of agreement is binding, and 'an award of compensation entered upon such agreement is as enforceable as an award entered in a contested proceeding.'" Butler v. City of Virginia Beach, 22 Va. App. 601, 604, 471 S.E.2d 830, 832 (1996) (quoting Hartford Fire Ins. Co. v. Tucker, 3 Va. App. 116, 121, 348 S.E.2d 416, 419 (1986)); see also Code §§ 65.2-701(A) and -706(A). "Absent clear and convincing evidence of fraud, misrepresentation, mutual mistake or imposition, the commission has no authority to vacate an award from which no party sought timely review." Butler, 22 Va. App. at 604, 471 S.E.2d at 832; accord K & L Trucking Co. v. Thurber, 1 Va. App. 213, 337 S.E.2d 299 (1985).

However, pursuant to Code § 65.2-708, an award and whether a claimant is disabled are subject to review upon the application of either party or the commission alleging a change in condition. "An award based on a change in condition is different from the right to recover for the injury itself; a change in condition is remedial and enlarges or diminishes a former award to meet the circumstances of a particular case." Bartholow Drywall Co. v. Hill, 12 Va. App. 790, 793, 407 S.E.2d 1, 2-3 (1991). The statute defines a change in condition as "a change in physical condition of the employee as well as any change in the conditions

under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation."  Code § 65.2-101.  "These changes include 'progression, deterioration, or aggravation of the compensable condition . . . appearance of new or more serious features [and] failure to recover within the time originally predicted . . . .'"  Armstrong Furniture v. Elder, 4 Va. App. 238, 243, 356 S.E.2d 614, 616 (1987) (quoting 3 A. Larson, The Law of Workmen's Compensation § 81.31(a) (1983)).  When a change in condition is alleged and proven, the commission may make an award either "ending, diminishing, or increasing the compensation previously awarded . . . ."  Code § 65.2-708.

In this case, the claimant requested a review of the November 1992 award alleging a change in her condition.  Based on the Memorandum of Agreement, the claimant's original award was for an injury which was a contusion to the finger.  Thereafter, she alleged a change in condition in that she was disabled due to traumatic carpal tunnel syndrome that was caused by her injury.  Because the traumatic carpal tunnel syndrome developed as a "new and more serious feature" which caused the claimant not "to recover within the time originally predicted," the commission did not err in considering whether the claimant was able to do her pre-injury work due to traumatic carpal tunnel syndrome caused by the accidental injury after the November 1992 award.  Furthermore, the commission's finding that the Agreed Statement

of Fact had no particular significance to whether the claimant thereafter was disabled is essentially correct. Based solely upon the contusion to the finger, the statement indicates that the claimant was able to return to her pre-injury work. Neither the Agreement, the Statement of Fact, nor the award contemplates that the claimant's injury or its consequences was anything other than a contusion to the finger. However, the claimant's change in condition application alleges, in effect, that when she attempted to return to work, she was disabled due to the traumatic carpal tunnel syndrome.

## CHANGE IN CONDITION

"When an employee files an application for reinstatement of disability benefits, two questions arise: (1) has there been a change in the employee's capacity to work; (2) if so, is the change due to a condition causally connected with the injury originally compensated." King's Market v. Porter, 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984). "General principles of workman's compensation law provide that 'in an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence.'" Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986)). The employer contends that the evidence presented by the claimant is

insufficient to meet her burden of proof because she did not show that her condition had changed from the time of the initial award and because all of the treating physicians, with the exception of Dr. Bonner, who expressed no opinion on the issue, stated that she could return to work.

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Based upon our review of the record, we hold that there is sufficient credible evidence in the record to support the claimant's change in condition application.

After reviewing the records from Dr. Leibovic and examining the claimant, Dr. Bonner diagnosed the claimant's condition as traumatic carpal tunnel syndrome and opined that she has a 15% permanent partial disability due to the injury that she received on August 28, 1992. Dr. Bonner's letter dated May 31, 1995 causally connects the claimant's carpal tunnel syndrome to her injury by accident, which was deemed compensable in the November 1992 award. Dr. Bonner expressed no opinion on the claimant's ability to perform her pre-injury work. However, he did put the claimant on light duty restrictions which included no heavy lifting and no repetitive activities with her hands.

Drs. Irby, Leibovic, and Belle opined that the claimant would, at some point, recover from the contusion to her finger and be able to return to her pre-injury work. However, being

able to return to work "is not the standard for determining disability. The threshold test of compensability is whether the employee is 'able fully to perform the duties of his preinjury employment.'" Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985). The claimant testified that she did try to return to her pre-injury work, but was unable to perform the job. The disability related to the traumatic carpal tunnel syndrome, not to the contusion of the finger. The commission found that the claimant made a bona fide effort to return to work, but due to the carpal tunnel syndrome she was unable to do her job. Although Drs. Irby, Leibovic, and Belle opined that she could return to work, "[t]he fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's finding." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). The claimant's testimony regarding her inability to do the work and Dr. Bonner's diagnosis are credible evidence sufficient to support the commission's decision that the claimant was partially disabled as a result of traumatic carpal tunnel syndrome and that a change occurred in the claimant's condition.

PERMANENT PARTIAL DISABILITY AND TEMPORARY TOTAL BENEFITS

The employer contends that the commission erred in finding that the claimant suffered a permanent disability. However, Dr. Bonner's opinion that the claimant suffered from a 15% permanent partial disability as a result of the carpal tunnel syndrome is

- 12 -

sufficient credible evidence to support the commission's finding of permanent disability. In view of the fact that the claimant was partially disabled and discharged from her position, she is entitled to temporary total disability benefits if she made a reasonable effort to market her residual work capacity. See Washington Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 655-56 (1985); Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 684, 112 S.E.2d 904, 906 (1960); Pocahontas Fuel Co. v. Agee, 201 Va. 678, 681, 112 S.E.2d 835, 838 (1960); Island Creek Coal Co. v. Fletcher, 201 Va. 645, 648, 112 S.E.2d 833, 835 (1960). The commission found that the claimant made a reasonable effort to market her residual work capacity by contacting more than 100 potential employers between January 1993 and June 1995 and by registering with the Virginia Employment Commission. On appeal, the employer does not challenge the commission's finding of reasonable marketing, therefore, we affirm the commission's decision on this issue.

ABANDONMENT

The employer's final argument is that the claimant abandoned her treating physician and sought unauthorized medical treatment, which bars her from receiving disability benefits. Based upon the commission's findings that the claimant was not offered a panel of physicians and that the employer refused to pay for the claimant's medical treatment, the commission found that Dr. Belle, the claimant's personal physician whom she saw after the

- 13 -

employer refused to pay for continued care by Dr. Leibovic, was her treating physician. The employer argues that these findings were erroneous in that the commission purported to base its decision on unrebutted evidence. Regardless of the fact that the commission erred in not considering the rebuttal evidence and regardless of who was the claimant's treating physician, there is no evidence that the claimant unjustifiably refused the medical treatment of any doctor which would require a suspension of her benefits.

> Code § 65.2-603(B) states in pertinent part:
> The unjustified refusal of the employee to accept such medical service . . . when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Commission, the circumstances justified the refusal.

As we have previously stated, "[a]n unauthorized change in physicians . . . is not necessarily equivalent to a refusal of medical services under Code § [65.2-603(B)]." Davis v. Brown & Williamson Tobacco Co., 3 Va. App. 123, 127, 348 S.E.2d 420, 422 (1986). In order to constitute a refusal of medical services, there must be some evidence that the claimant has "refused to undergo medical treatment or to participate in the plan of treatment recommended by the treating physician." Id.

In this case, there was no course of treatment recommended by any physician, regardless of who the actual treating physician was. The record shows that Dr. Leibovic instructed the claimant

to wear a splint and to avoid heavy lifting and repetitive motions.  Dr. Belle prescribed a sling, Motrin for pain, and Valium to help the claimant rest.  There is no evidence in the record that the claimant failed to follow the advice of either of doctor.  Therefore, we cannot say that the claimant refused medical treatment which would require a suspension of her benefits.  There was evidence that the claimant failed to keep three follow-up appointments with Dr. Leibovic.  However, the evidence shows that he had released her to return to work, that these scheduled appointments were to follow her progress, and were not part of a continuing course of treatment which she abandoned.

For the foregoing reasons, we affirm the decision of the commission.

Affirmed.