COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


WAYNESBORO (CITY OF) POLICE AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION
                                            OPINION BY
v.   Record No. 1456-00-2          JUDGE SAM W. COLEMAN III
                                         APRIL 17, 2001
SHARON ANN COFFEY, WIDOW, AND
 HAROLD BERNARD COFFEY, JR. (DECEASED)


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Ralph L. Whitt, Jr. (Michael P. Del Bueno;
            Williams, Lynch & Whitt; Whitt & Associates,
            on briefs), for appellants.

            Malcolm Parks (Maloney, Parks, Clarke &
            Nathanson, P.C., on brief), for appellee.


     The City of Waynesboro Police Department and its insurer

(employer) appeal the Workers' Compensation Commission's

(commission) decision awarding dependent's benefits to Sharon

Ann Coffey (claimant) pursuant to Code §§ 65.2-512 and -515, for

the death of her husband, Harold Bernard Coffey, Jr. (Coffey).

Employer contends the commission erred in finding that Coffey

had heart disease or, if he did have heart disease, erred in

holding that employer failed to rebut the statutory presumption

of Code § 65.2-402(B) that Coffey's heart condition was an

occupational disease covered by the Workers' Compensation Act.

For the following reasons, we affirm.

## I. BACKGROUND

Coffey was a fifty-three-year-old police officer for the City of Waynesboro. He began his career in 1970 as a patrolman for the city. However, for the past fifteen years, Coffey had been a desk officer, working rotating shifts. As a desk officer, Coffey monitored prisoners in lock-up, monitored entrances and exits of the police station to assure security, completed paperwork, answered the phones, assisted citizens with questions, and performed various clerical duties. For several years before his death, Coffey voluntarily patrolled low-income housing in Waynesboro two or three times per month, in addition to his duties as a desk officer.

On May 26, 1996, the day of his death, Coffey and claimant purchased a television set and a gas grill. Coffey carried the television into the house, up four steps, and placed the television in the couple's bedroom. Coffey became winded carrying the television and grill, but he did not complain of discomfort. Approximately thirty minutes after Coffey had carried the television into his house and while he was programming it, Coffey suddenly dropped the remote control and fell off the bed and against the wall. He never regained consciousness.

Immediately after he collapsed, claimant called 911. Deputy Sheriff John Howard, claimant's son, arrived within a few

minutes and checked Coffey for a pulse and respiration, but found none. Emergency medical technicians arrived immediately thereafter and began administering CPR. Efforts to resuscitate Coffey, which included chest compressions, electrically shocking the heart, applying an external cardiac pacemaker, and administering epinephrine, atropine, and dextrose, failed. Coffey was pronounced dead at the scene and transported directly to the funeral home. Without examining the body, Coffey's family physician for thirty years, Dr. John W. Forbes III, executed the death certificate, indicating that Coffey died as a result of acute myocardial infarction. No autopsy was performed or requested.

Claimant testified that on the day of her husband's death, he did not complain of any discomfort or illness. She said immediately before his death he did not appear confused or disorientated, his speech was clear, and he was not perspiring. Claimant stated that, although Coffey had seemed winded from carrying the television, he seemed fine before he died.

Claimant filed a claim for death, medical, and funeral benefits. The commission awarded her benefits.

## II. ANALYSIS

"Matters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission, and

are conclusive and binding on the Court of Appeals." Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990) (citations omitted); see also Code § 65.2-706(A). "Medical evidence is . . . subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). "Questions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

### A.  Finding of Heart Disease

Code § 65.2-402(B) provides:

> [H]eart disease causing the death of . . .
> members of county, city or town police
> departments . . . shall be presumed to be
> occupational diseases, suffered in the line
> of duty, that are covered by this title
> unless such presumption is overcome by a
> preponderance of competent evidence to the
> contrary.

Thus, the first issue is whether the evidence is sufficient to prove that Coffey died as a result of a heart attack or heart disease. See Page v. City of Richmond, 218 Va. 844, 847, 241 S.E.2d 775, 777 (1978).

Coffey had not been diagnosed with heart disease prior to his death, and no postmortem examination was conducted.[1] However, six physicians rendered opinions as to the cause of Coffey's death. See Code § 8.01-401.1 ("[A]ny expert witness may give testimony and render an opinion or draw inferences from facts, circumstances, or data made known to . . . such witness . . . . The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data . . . ."); Cox v. Oakwood Mining, Inc., 16 Va. App. 965, 434 S.E.2d 904 (1993) (applying Code § 8.01-401.1). Dr. Charles L. Baird, Jr., a cardiologist retained by employer, testified that based on his review of claimant's account of Coffey's death and his medical records and lab reports, Coffey, "more probably than not," died of ventricular fibrillation induced by extreme exercise. Dr. Baird stated that ventricular fibrillation "is a fatal arrhythmia characterized by rapid electrical impulses that are inconsistent with life unless otherwise a patient undergoes fibrillation." Ventricular fibrillation may be caused by any number of conditions, including ischemic heart disease, myocardial infarction, drugs, exercise, or psychological induction of the

---

[1] Code § 65.2-402(F) provides that the employer may require a postmortem examination to be conducted to determine the cause of death when a claim is made for death benefits due to hypertension or heart disease.

vasospasm; it is an arrhythmia that may not necessarily be associated with heart disease. Dr. Baird testified that, although most instances of ventricular fibrillation are associated with coronary atherosclerosis, there was no evidence in this case to suggest that Coffey had coronary atherosclerosis.

Dr. Robert M. Bennett, a cardiologist retained by employer, testified that, based on his examination of the evidence supplied by employer, he was unable to determine, from the information provided, whether Coffey suffered a myocardial infarction or whether he had coronary artery disease. Dr. Bennett opined that, based on the circumstances surrounding his death, Coffey may have died as a result of any number of causes, including intracranial bleed, a Berry aneurysm, ruptured thoracic aneurysm, ruptured abdominal aneurysm, ventricular fibrillation, massive myocardial infarction, or a massive pulmonary embolus. Dr. Bennett, however, stated that because of the lack of information available, it was impossible to conclude if any of these conditions caused Coffey's death. Dr. Bennett further stated no evidence suggested that Coffey did not die as a result of some type of cardiac dysfunction.

Dr. Stuart F. Seides, a cardiologist retained by employer, opined that because Coffey died suddenly, unexpectedly, and without warning and because a postmortem examination was not

performed, he was unable to determine the cause of Coffey's death.  Dr. Seides opined, however, that based on Coffey's medical background, including the presence of several major risk factors, and based on the circumstances of his death, it is statistically probable that Coffey died of a "sudden cardiac arrhythmia in the setting of underlying coronary heart disease," or coronary atherosclerosis.

Dr. Richard A. Schwartz, a clinical cardiologist retained by claimant, opined that Coffey died of ventricular fibrillation secondary to coronary artery disease or fatal cardiac arrhythmia.  Dr. Schwartz stated that, based on his review of Coffey's medical records, there was no indication that Coffey had cardiac arrhythmia due to a cause other than ischemia, which is a lack of blood or oxygen to the heart muscle.  Although Dr. Schwartz conceded that there were other causes of cardiac arrhythmia, he stated that those causes would have been apparent from Coffey's last physical examination performed the month before his death.  He further stated that, even assuming Coffey had hypertension, the fact that Coffey was under active treatment and taking medication for hypertension would eliminate the condition as a risk factor.  Dr. Schwartz stated that there are several risk factors statistically correlated with heart disease, including smoking, high blood pressure, elevated cholesterol, physical inactivity, intercurrent diseases, and

stress.  Dr. Schwartz stated that law enforcement officers are twice as likely to develop heart disease as others in the general population.

Dr. William Toomy, an internist who performs physical examinations for the City of Waynesboro Police Department, testified that he performed a physical examination of Coffey in April 1996, a month before his death.  At the time of the examination, Dr. Toomy diagnosed Coffey with exogenous obesity, treated hypertension, hyperglycemia, hyperlipidemia, and cigarette addiction.  Dr. Toomy also obtained an electrocardiographic tracing, which did not indicate any abnormalities.  Coffey was not diagnosed with heart disease at the time.  Dr. Toomy noted that Coffey had a family history of arteriosclerotic heart disease.  Dr. Toomy stated that the "most likely" cause of Coffey's death was cardiac arrhythmia.

Dr. John W. Forbes III, Coffey's treating physician for thirty years, testified that prior to Coffey's employment as a police officer, he was not diagnosed with heart disease or hypertension.  However, Dr. Forbes later treated Coffey with medications for hypertension and chronic anxiety.  Based on the circumstances of Coffey's death and the reports of the rescue personnel who tried to resuscitate Coffey, Dr. Forbes opined that Coffey died as a result of acute myocardial infarction. Dr. Forbes stated that "the most likely cause of the heart

attack" was atherosclerotic coronary artery disease. Dr. Forbes rejected the possibility that Coffey died of a stroke or an aneurysm, because immediately after the incident, Coffey had no heart activity. Dr. Forbes last saw Coffey in March 1996, at which time he treated Coffey for high blood pressure, a back problem, and chronic anxiety.

Credible evidence in the record supports the commission's finding that Coffey died as a result of heart disease. "An expert's opinion which is neither based upon facts within his own knowledge nor established by other evidence is speculative and possesses no evidential value." Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990). However, a doctor's expert medical opinion is not speculative if based on an accurate understanding of the relevant facts. See id.; cf. Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985) (per curiam) (holding that a doctor's medical opinion was not credible when based upon a faulty premise); Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980) (stating that a medical opinion is speculative if based on a "possibility" but admissible and sufficient if based on a "reasonable probability"); Circuit City Stores, Inc. v. Scotece, 28 Va. App. 383, 387-88, 504 S.E.2d 881, 883-84 (1998) (adopting standard for admissibility of medical evidence articulated in Spruill). In rendering their opinions, the physicians had

access to Coffey's medical records, the records of the emergency personnel who attempted to resuscitate Coffey, and claimant's deposition detailing the facts and circumstances immediately preceding Coffey's death. Dr. Baird opined that Coffey died as a result of ventricular fibrillation and conceded that, in most instances, ventricular fibrillation is associated with coronary atherosclerosis. Dr. Bennett was unable to render a conclusive opinion as to the cause of death. Dr. Schwartz stated that Coffey died of ventricular fibrillation secondary to coronary artery disease, and Dr. Seides opined that Coffey died as a result of cardiac arrhythmia in the setting of coronary artery disease. Although employer's experts advanced alternative causes for Coffey's death, the physicians stated that such causes other than heart disease were unusual. Therefore, credible evidence supports the commission's finding that Coffey died of heart disease. Accordingly, we affirm the commission's finding that Coffey died from heart disease.

### B. Statutory Presumption of Code § 65.2-402(B)

Employer also contends the commission erred in finding that employer failed to rebut the presumption that Coffey's heart disease was an occupational disease as provided in Code § 65.2-402(B).

Code § 65.2-402(B) provides, in part, that once the claimant had shown that the law enforcement official died as a

- 10 -

result of heart disease, the heart disease shall be presumed to be an occupational disease unless this presumption is sufficiently rebutted by employer.

The Supreme Court recently held that

> [t]o overcome the presumption [contained in Code § 65.2-402(B)], the employer must show, by a preponderance of the evidence, both that 1) the [employee's] disease was not caused by his employment, and 2) there was a non-work-related cause of the disease. Thus, if the employer does not prove by a preponderance of the evidence both parts of this two-part test, the employer has failed to overcome the statutory presumption.

Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 562-63 (1999) (citations omitted).

Employer's expert witnesses, Drs. Baird, Bennett, and Seides, all concluded that, assuming Coffey had heart disease, Coffey's employment was not a causative factor in that disease. Dr. Baird, although admitting that stress was a factor in the development of coronary artery disease, stated that Coffey's "methods of managing stress, whether it be domestic or occupational, is not the fault of the employer." Dr. Baird further stated that "the stresses of [Coffey's] occupation is a minor factor in [his] death." The commission found that, although Dr. Baird excluded Coffey's employment as a "major" cause of his death, such a conclusion was insufficient to exclude occupational stress as a significant contributing cause of Coffey's death. Dr. Bennett opined that, even assuming

- 11 -

Coffey had heart disease, he "could reasonably exclude Coffey's employment as a cause of his heart disease." Dr. Bennett concluded that stress in Coffey's case was a "very, very minor factor." Dr. Seides also stated that he could exclude Coffey's employment as a police officer as a contributing factor in his death, because to conclude otherwise would be inconsistent with "our current scientific thinking."

However, claimant's experts, Drs. Schwartz, Toomy, and Forbes, opined otherwise. Dr. Schwartz concluded that occupational stress causes or contributes to heart disease. Dr. Schwartz stated: "It is my opinion that it is more probable than not that Mr. Coffey's occupational stress as a law enforcement officer was a major risk factor and significant contributing cause in the development of his heart disease." Dr. Schwartz stated that no evidence indicated that Coffey's heart disease was a result of a congenital defect or abnormality or the result of trauma to the chest. Dr. Toomy also could not exclude Coffey's employment as a causal factor in his death. The commission, however, gave little weight to Dr. Toomy's opinion, because, as the commission noted, Dr. Toomy was unable to state whether stress or any of the other risk factors caused Coffey's heart disease.

Dr. Forbes opined that factors such as smoking, hypertension, obesity, and job stress contributed to Coffey's

death.  Dr. Forbes stated that Coffey had reported that some of his anxiety was related, in part, to the suicide of a fellow police officer.  Dr. Forbes could not exclude Coffey's employment as a contributing factor in the development, acceleration, or aggravation of his heart disease.  Dr. Forbes filed a supplementary report stating, "In my opinion, Officer Harold Coffey's occupation as a law enforcement officer was one of several causes of his heart disease and death."  The commission, in weighing Dr. Forbes' opinion, noted that Dr. Forbes was unaware of the specific kinds of stress that Coffey encountered on the job and was not intimately familiar with the medical literature pertaining to this subject.

Employer contends, and Coffey concedes, that employer demonstrated the presence of a non-work-related cause of the disease, the second prong of the Bass two-part test employer was required to meet in order to rebut the statutory presumption. The record revealed that Coffey had several non-work-related risk factors associated with heart disease, including high blood pressure, obesity, history of tobacco use, a positive family history of early coronary atherosclerosis, and elevated blood sugar.  Employer further contends that it met the first prong of the Bass test, by proving that Coffey's heart disease was not caused by his employment.  Employer relies on the opinions of Drs. Baird, Bennett, and Seides, three cardiac experts retained

by employer, who unequivocally excluded Coffey's employment as a causative factor in his death. Dr. Seides concluded, "with a high degree of medical certainty," that Coffey's employment could be excluded as a contributing cause in his death, and Dr. Bennett stated that he "could reasonably exclude [Coffey's] employment as a cause of his heart disease." Employer contends the commission erred in concluding that employer failed to prove by a preponderance of the evidence that Coffey's employment could be excluded as a cause of his heart disease because the evidence was, "[a]t best," in "equipoise." We disagree.

In concluding that employer failed to prove that work was not a cause of Coffey's heart disease, the commission noted that the medical evidence was in substantial conflict. The commission stated that "[a]t best, we find the evidence to be in equipiose, with the opinions of Drs. Forbes and Schwartz balancing the contrary opinions from other physicians." "If the rebuttal evidence fails to exclude a work-related factor as causing the heart disease or if there are conflicting medical opinions as to whether the employment caused the disease, the finding of the Commission as to causation is conclusive and binding on appeal." Virginia Dep't of State Police v. Talbert, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985).

> In enacting the statute, "[t]he legislature knew that the causes of . . . cardiac diseases are unknown and that the medical community is split regarding the impact of

- 14 -

> stress and work environment on these diseases." By enacting the statutory presumption, the General Assembly resolved the split in medical opinions in favor of the employee and adopted the presumption that the stress of working as a law enforcement officer causes or contributes to the development of heart disease.

Medlin v. County of Henrico Police, 34 Va. App. 396, 406, 542 S.E.2d 33, 38 (2001) (citations omitted).

Here, Dr. Seides excluded Coffey's employment as a cause of his heart disease, concluding that to do otherwise would be inconsistent with "our current scientific thinking." Dr. Baird excluded Coffey's employment as a cause, stating that "methods of managing stress . . . are not the fault of the employer." Both Drs. Seides' and Baird's opinions impermissibly attempted to rebut the legislative presumption by negating any causal link between occupational stress and heart disease, and, thus, is not probative rebuttal evidence. Id. at 407, 542 S.E.2d at 38-39. Further, Dr. Bennett, although stating that he could exclude Coffey's employment as the cause of his heart disease, conceded that stress was a "minor factor" in this case. As the commission noted, although Dr. Bennett relegated stress as a minor factor, Dr. Bennett failed to exclude it as a significant factor causing his heart disease. Accordingly, the commission did not err in finding that employer's rebuttal evidence failed to exclude Coffey's occupational stress as a cause of his heart disease.

- 15 -

We find no error in the commission's decision that employer failed to rebut the statutory presumption of Code § 65.2-402 that Coffey's heart disease was caused by his employment. Accordingly, we affirm.

Affirmed.