COURT OF APPEALS OF VIRGINIA


Present:  Judges Clements, Felton and McClanahan
Argued at Alexandria, Virginia


DON PABLOS MEXICAN KITCHEN AND
 LUMBERMENS MUTUAL CASUALTY COMPANY

v.      Record No. 0088-04-4

RAYMOND E. NICE, II                                   MEMORANDUM OPINION* BY
                                                      JUDGE ELIZABETH A. McCLANAHAN
RAYMOND E. NICE, II                                   SEPTEMBER 7, 2004

v.      Record No. 0108-04-4

DON PABLOS MEXICAN KITCHEN AND
 LUMBERMENS MUTUAL CASUALTY COMPANY

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                 Joseph F. Giordano (Vanessa L. Crocket; Semmes, Bowen &
                 Semmes, P.C., on briefs), for Don Pablos Mexican Kitchen and
                 Lumbermens Mutual Casualty Company.

                 Peter M. Sweeny for Raymond E. Nice, II.


        Don Pablos Mexican Kitchen and Lumbermens Mutual Casualty Company (appellants)

appeal from a decision of the Virginia Workers' Compensation Commission (commission)

finding Raymond Nice, II (claimant) suffered compensable post-traumatic stress disorder

(PTSD) and Meniere's Syndrome from a work incident that occurred on June 19, 2001.

Appellants contend that as a matter of law, there was insufficient evidence on the record to

support these findings.  Claimant has filed a cross-appeal, raising three questions: 1) whether

there was credible evidence for the commission to find that claimant's fibromyalgia was not

causally related to the work incident; 2) whether there was credible evidence for the commission

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to conclude that injuries sustained in the incident did not aggravate a pre-existing back condition; and 3) whether there was credible evidence to support the commission's finding that claimant did not suffer a brain injury as a direct result of the work incident.  We affirm.

## I.  Background

In an appeal from an award of compensation by the commission, "'we view the evidence in the light most favorable to the prevailing party' before the commission."  Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003) (quoting Tomes v. James City (County of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002)); R.G. Moore Bldg. Corp., v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  In the light most favorable to the prevailing party on each of the claims raised in these two appeals, the facts are as follows:

On June 19, 2001, claimant, a manager for Don Pablos Mexican Kitchen, suffered an electric shock while plugging in a small refrigerator during a food-safety inspection at the restaurant.  Although no burn marks or entrance or exit wounds were visible on the claimant, the shock traveled through his left hand.  The intensity and voltage of the electric shock could not be determined.  Following this incident, claimant's primary care physician, Dr. DeRusso, referred him to a neurologist, Dr. Singh.

On July 3, 2001, Dr. Singh evaluated claimant's complaints of headaches, photophobia, occasional nausea, vomiting and recurrent syncopal episodes that he said he experienced after the incident.  The claimant thereafter underwent a number of tests.  All tests were normal and showed claimant suffered no injury to the brain stem.  After an extensive neurological evaluation, Dr. Singh released claimant to work, effective August 13, 2001.

On November 27, 2001, Dr. Janati, a board certified neurologist, examined claimant for the first time.  Dr. Janati diagnosed claimant as suffering from fibromyalgia and PTSD.

Dr. Janati had seven years of experience treating Vietnam veterans with PTSD, and based on claimant's course of symptoms and medical history, traced the PTSD to the electric shock claimant received on June 19, 2001. Dr. Janati also believed claimant's fibromyalgia was caused by the same incident. He rendered this diagnosis without any knowledge that claimant was treated prior to the incident for back spasms, injuries to the back, chest, and left shoulder from slipping on ice, dizziness related to being hit on the head with a metal tray, or for injuries sustained to his head as a result of slipping on food in his kitchen at home. At the time of his examination, Dr. Janati was also unaware that in May 2001, claimant's back was given a fifty percent permanent disability rating by another physician.

On January 3, 2002, claimant sought treatment from Dr. Nathan, a board certified otolaryngologist for decreased hearing, ringing in his ears, and severe dizziness. Claimant attributed these conditions to the electric shock he received. A hearing test revealed claimant suffered from moderate to severe hearing loss in both ears. An electrocochlegram (ECOG) conducted by Dr. Nathan indicated claimant experienced an increase in fluid pressure in the systems of the inner ear following the electric shock. Based on medical history and assertions from claimant and his wife that there was "a significant change in his hearing after the injury," Dr. Nathan diagnosed him with Meniere's Syndrome, which he causally related to the work incident of June 19, 2001. However, in a deposition, Dr. Nathan admitted that there is no definite cause to Meniere's Syndrome and that it is often induced by multiple factors.

Claimant's employer and its insurance carrier disputed the nature and extent of the claimant's injuries. At a hearing on the matter, the deputy commissioner found that the claimant's PTSD, fibromyalgia, and Meniere's Syndrome were causally related to the work incident of June 19, 2001. The deputy commissioner further found that PTSD constituted a brain injury in the claimant. The full commission reviewed the deputy commissioner's decision, and

concluded that the claimant had not established that his fibromyalgia was causally related to the work incident, and had not established that his PTSD constituted a brain injury.

## II. Analysis

### A. PTSD

Appellants argue that, as a matter of law, there was insufficient evidence for the commission to make a factual determination that the claimant suffered PTSD from the electric shock that occurred on June 19, 2001. Appellants claim that a lack of testing to confirm PTSD and Dr. Janati's inexperience made his opinion regarding claimant's PTSD amount to mere conjecture or speculation and, thus, are insufficient to support the commission's finding. In a workers' compensation action, a claimant has "the burden of establishing, by a preponderance of the evidence, and not merely by conjecture or speculation, that [he] suffered an injury by accident which arose out of and in the course of the employment." Cent. State Hosp. v. Wiggers, 230 Va. 157, 159, 335 S.E.2d 257, 258 (1985) (citing Kings Mkt. v. Porter, 227 Va. 478, 484, 317 S.E.2d 146, 149 (1984)). Appellants contend that insufficient evidence existed to reach such a conclusion because Dr. Janati's diagnosis was based entirely on the subjective complaints of the claimant, and he performed no objective tests confirming PTSD. Appellants also assert Dr. Janati's lack of clinical experience in treating electric shock patients and inability to ascertain the intensity of the shock experienced by the claimant made him unqualified to render an opinion concerning the etiology of the PTSD suffered by the claimant.

The commission's determination as to whether a claimant's disability is causally related to a compensable condition is a finding of fact, which is binding on this Court if supported by credible evidence. Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985). Nevertheless, it is true that "[p]roof of the causal connection between the industrial accident and the disabling condition underlying the employee's application must go beyond the

realm of conjecture." King's Mkt., 227 Va. at 484, 317 S.E.2d at 149. "An expert's opinion which is neither based upon facts within his own knowledge nor established by other evidence is speculative and possesses no evidential value." Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990).

Viewing the evidence presented to the commission regarding the causal connection between the electric shock and the PTSD in the light most favorable to the claimant, we conclude there was credible evidence for the commission's finding. Dr. Janati's testimony, which the deputy commissioner and the commission credited, was that the claimant suffered from PTSD causally related to the electric shock he suffered on June 19, 2001. "[A] doctor's expert medical opinion is not speculative if based on an accurate understanding of the relevant facts." City of Waynesboro Police v. Coffey, 35 Va. App. 264, 272, 544 S.E.2d 860, 863 (2001). While testifying, Dr. Janati was firm in his diagnosis that the claimant suffered from PTSD. He opined that claimant's symptoms of memory loss, constant exhaustion, joint pain, excessive sweating, and frequent urination were autonomic signs of PTSD.

A medical opinion is legally sufficient if based on a reasonable probability. Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980); Circuit City Stores, Inc. v. Scotece, 28 Va. App. 383, 388, 504 S.E.2d 881, 884 (1998). Here, Dr. Janati's testimony went beyond simply describing the connection between the electric shock and claimant's PTSD as a mere possibility. Dr. Janati testified that such a connection was reasonably probable. Through Dr. Janati's testimony that the acuteness, suddenness, and unpredictability of the shock triggered the PTSD, the fact finder was provided with an adequate basis to determine by a preponderance of the evidence that there was a causal relationship. Though he had no clinical experience in treating victims of electric shock suffering from PTSD, Dr. Janati's experience with other patients suffering from PTSD, as well as his observation of claimant's numerous symptoms,

gave the commission a basis to conclude that his opinion was more than just speculation or conjecture. Wiggers, 230 Va. at 159, 335 S.E.2d at 258-59.

Thus, we cannot say as a matter of law that claimant's evidence was insufficient. Taking the evidence in its entirety, there was credible evidence to allow the commission to conclude that the onset of PTSD in the claimant was causally related to the June 19, 2001 work incident.

### B. Meniere's Syndrome

Appellants also contend that, as a matter of law, there was insufficient evidence to support the commission's finding that the claimant sustained Meniere's Syndrome from the electric shock. We disagree.

According to Dr. Nathan, there were significant changes in the claimant's hearing following the incident. He testified that "the probability is that there was a life-changing event during that electrocution" that led to the Meniere's Syndrome. From the ECOG he conducted, Dr. Nathan measured a sizable increase in fluid pressure in the claimant's inner ear, which he testified was one of the hallmarks of Meniere's Syndrome. In addition, the hearing test conducted after the incident, as well as claimant's lack of documented hearing problems before the incident, provided sufficient evidence for the commission to conclude that there was a causal relationship between the electric shock and the onset of Meniere's Syndrome in the claimant.

A medical opinion is not legally insufficient if credible evidence supports that there is a reasonable probability that the work incident caused a claimant's injuries. Spruill, 221 Va. at 479, 271 S.E.2d at 421; Scotece, 28 Va. App. at 388, 504 S.E.2d at 884. Finding credible evidence on the record to support the commission's conclusions, we affirm its findings that the claimant suffered PTSD and Meniere's Syndrome causally related to the work incident of June 19, 2001.

C. Fibromyalgia and Aggravation of a Pre-Existing Back Condition

In his cross-appeal, claimant argues that there was no credible evidence in the record to support the commission's conclusion that he had not proved that his fibromyalgia was causally related to the electric shock. Claimant relied on the testimony of Dr. Janati to assert that he suffered from fibromyalgia that was causally related to his employment. By its order, the commission rejected that part of Dr. Janati's testimony. It did not do so without a credible basis. "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215, (1991). Where a medical opinion is based upon an incomplete or inaccurate medical history, the commission is entitled to conclude that the opinion is of little probative value. See Clinchfield Coal Co. v. Bowman, 229 Va. 249, 251-52, 329 S.E.2d 15, 16 (1985).

The record shows that Dr. Janati did not consider the claimant's history of back problems when formulating his opinion that the electric shock caused claimant's fibromyalgia. Dr. Janati admitted that he had no knowledge that one month prior to the work incident, claimant's back was given a fifty percent disability rating by another physician. The commission is permitted to weigh Dr. Janati's opinion against the claimant's medical history, and to conclude that the claimant had not established that his fibromyalgia arose from the June 19, 2001 work incident. The commission's examination of the claimant's medical history of prior slips, falls, and back problems gave the commission a credible basis from which to conclude the claimant had not established that his fibromyalgia was causally related to the electric shock.

Claimant similarly asserts that the commission erred in concluding that the incident did not aggravate his pre-existing back condition. However, Dr. Janati's testimony regarding the connection between the incident and any aggravation in claimant's pre-existing back condition was also subject to consideration and weighing by the commission. Hungerford Mech. Corp., 11

Va. App. at 677, 401 S.E.2d at 215. The commission concluded that claimant had failed to establish that connection. Because this conclusion has a credible basis, we will not disturb it on appeal.

## D. Brain Injury

Finally, claimant disputes the commission's finding that he suffered no compensable brain injury as a result of the work incident. Under Code § 65.2-503(C)(3), a compensable brain injury is defined as "an injury to the brain which is so severe as to render the employee permanently unemployable in gainful employment." This Court has classified injuries to the brain as being compensable when they are irreversible, render the claimant permanently unemployable, affect the claimant's non-vocational quality of life, and eliminate claimant's ability to engage in a range of usual cognitive processes. Barnett v. D.L. Bramwell, Inc., 6 Va. App. 30, 36, 366 S.E.2d 271, 274 (1988).

We find no merit in claimant's argument. Having considered the results of the extensive neurological testing claimant underwent after the incident, the commission concluded that the claimant had failed to establish an injury to his brain that occurred directly from the electric shock. There was a credible basis for this conclusion. Claimant underwent an MRI of the brain, two EEG studies, an EMG, a nerve conduction study, video seizure monitoring, and an ambulatory electroencephalogram, all of which failed to show any brain injury as a result of an electric shock. Dr. Janati testified that it was very difficult to determine if there was an injury to the claimant's hypothalamus caused by an electrical injury, and admitted he did not conduct endocrine tests on the claimant, which may have indicated whether there was any injury to the claimant's hypothalamus. Claimant's failure to present any evidence that he suffered a brain injury from the electric shock, coupled with a battery of neurological tests that indicated no

injury occurred directly from the shock, provides credible evidence to support the commission's finding.

As a related matter claimant contends that, as a matter of law the commission erred by finding that although he suffered from PTSD, he had not established that this disorder represented a brain injury. Whether a claimant has suffered a brain injury is a factual determination for the commission to make, and should not be overturned unless unsupported by credible evidence. S. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). We decline to hold as a matter of law that PTSD is conclusive evidence of a brain injury.

Although Dr. Janati testified that chemical changes occur in the brain as a result of PTSD, he also indicated there is no test to confirm whether there were any changes in the neurological system in humans as a result of PTSD. When asked if there was any way to measure chemical changes in the brain, he responded, "No. This has never been explored in humans."

As fact finder, it was the commission's prerogative to determine what weight to accord Dr. Janati's medical opinion in determining whether PTSD constituted a brain injury in the claimant. See Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989); Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987). This Court is required to defer to the commission's fact finding "'even [where] there is evidence in the record to support a contrary finding.'" S.P. Terry Co. v. Rubinos, 38 Va. App. 624, 632, 567 S.E.2d 584, 588 (2002) (quoting Morris v. Badger Powhatan/Figgie Int'l, 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986)). "Where divergent or conflicting inferences reasonably might be drawn from established facts their determination is exclusively for the

fact-finding body." Hopson v. Hungerford Coal Co., 187 Va. 299, 308, 46 S.E.2d 392, 396 (1948). Although the commission could have inferred from Dr. Janati's testimony that a brain injury had occurred in the claimant, it did not, and on review we are bound by its findings.

Claimant's reliance on Daniel Construction Company v. Tolley, 24 Va. App. 70, 480 S.E.2d 145 (1997), to assert that the commission erred is misplaced. In Tolley, this Court affirmed a finding by the commission that the claimant had suffered a brain injury as a result of PTSD brought on by a sudden dynamite explosion. Id. at 77, 480 S.E.2d at 148. The commission relied on a medical expert's testimony that the claimant in that case had experienced structural changes caused by PTSD and that these changes constituted a brain injury. The commission in Tolley also relied upon medical records, which indicated that the brain injury had been consistently diagnosed since the time of the explosion.

In the instant case, there is no such testimony on the record by Dr. Janati or any other medical expert. Dr. Janati's testimony regarding chemical changes caused by PTSD contained notable omissions. At no point did Dr. Janati, or any other witness, state that chemical changes constitute a brain injury. Thus, although the record contains evidence indicating chemical changes occur in PTSD victims, it is void of any evidence characterizing such changes as a brain injury.

Accordingly, we affirm the judgment of the commission.

Affirmed.