COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


S. P. TERRY COMPANY, INC. AND
 MONTGOMERY PEERLESS INSURANCE COMPANY
                                        OPINION BY
v.    Record No. 2470-01-2        JUDGE JEAN HARRISON CLEMENTS
                                        AUGUST 13, 2002
JORGE RUBINOS


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Patricia C. Arrighi (Taylor & Walker, P.C.,
            on brief), for appellants.

            Craig B. Davis (Geoffrey R. McDonald &
            Associates, on brief), for appellee.


     S. P. Terry Company, Inc. and Montgomery Peerless Insurance

Company (collectively, employer) appeal an award by the Workers'

Compensation Commission (commission) of temporary total

disability benefits, temporary partial disability benefits, and

medical benefits to Jorge Rubinos (claimant).  Employer contends

the commission erred in ruling that the aggravation of

claimant's compensable injury to his hand was compensable

because employer gave claimant work that required him to exceed

his work restrictions, even though claimant willfully violated

his work restrictions by performing that work.  Finding no error

by the commission, we affirm the award.

## I. BACKGROUND

In reviewing the commission's decision, we view the evidence in the light most favorable to claimant, the party prevailing before the commission. See Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998). So viewed, the evidence established that claimant, who worked for employer as a painter, suffered a compensable injury to his left thumb on June 9, 2000, while lifting a piece of scaffolding. He went to Patient First on June 12, 2000, where he was examined by Dr. G. Clifford Walton. Dr. Walton diagnosed a finger sprain. He limited claimant to light-duty work with no lifting with the left hand. When claimant returned for a follow-up examination on June 19, 2000, Dr. Walton took him out of work and referred him to Dr. Keith A. Glowacki, a hand specialist.

Dr. Glowacki examined claimant on June 20, 2000. He diagnosed a left thumb radial collateral ligament tear and placed claimant's left hand in a cast. Dr. Glowacki noted in his report that claimant would "have no use of that hand at work" for three to four weeks. He further estimated in a patient work status report dated June 20, 2000, that claimant would not have full use of his left hand for six weeks and indicated in the "work limitations" portion of that report that claimant was to have "no use of injured hand." Dr. Glowacki emphasized in the "comments" section of that report that claimant was to have "[a]bsolutely no use whatsoever of [left] hand!"

- 2 -

Following the examination and treatment by Dr. Glowacki, claimant returned to employer's office and gave employer's secretary a note from Dr. Glowacki regarding claimant's work restrictions. The secretary read the note and informed claimant she would speak to Steven Terry, employer's president and co-owner. Claimant went home to await employer's call regarding light-duty work.

More than a week later, claimant received a call from employer notifying him to return to work. He reported to employer's office on Friday, telling Terry the doctor had said he could work using only his right hand. Terry informed him there was no work for him that day and told him to return on Monday. On Monday, Terry sent claimant to an airport work site, where claimant was given the job of painting baseboards on the outside of a building.

Acknowledging he had received notification from Dr. Glowacki of claimant's work restrictions, Terry testified he told claimant's supervisor to let claimant do only low work that would not require him to climb ladders. Claimant testified his first day at the airport site was the only day employer gave him work that was within Dr. Glowacki's work restrictions. Even then, claimant added, the nature of the airport job required him to repeatedly lift a gallon of paint with his left hand. Claimant's assignment at the airport job lasted two days.

Terry then sent claimant to a work site at an apartment complex. Terry testified he again told claimant's supervisor to let claimant do only low work. Initially, claimant was given the job of painting several seven-foot-tall windows. When the windows were completed, claimant's supervisor had him paint a deck, which required him to lift and climb a sixteen-foot ladder. Claimant testified he was unable to lift and climb the ladder and paint the deck without using his left hand. Claimant further stated that, when he climbed the ladder, he had to temporarily remove a brace that had been prescribed by Dr. Glowacki for his left hand, because he was afraid he would fall off the ladder if he did not. Claimant also testified his supervisor saw him lift and climb the ladder using his left hand and remove his brace, but the supervisor did not tell claimant not to use his left hand. According to claimant, his supervisor told him he had to lift the ladder. Claimant did not ask anyone to help him. He complained to a co-worker that the work he was being given violated the work restrictions imposed by his doctor.

On July 7, 2000, claimant returned to Dr. Walton for a follow-up examination. He told the doctor he had been returned to regular duty at work. Dr. Walton referred him to Dr. Glowacki.

Claimant saw Dr. Glowacki on July 14, 2000. In his report of that visit, Dr. Glowacki wrote:

> [Claimant] is here just over 3 weeks out from his left thumb radial collateral ligament injury at the MP joint. He's stating that

- 4 -

his employer, although I gave him a note that said absolutely no use of his hand, is still making him lift ladders and do things that obviously require two hands. I told him there is only so much I can do and wrote a note that says that at this point [claimant] would be endangering himself and others further if he continued to use both hands. I filled out another note that says he has no use of that left hand until further notice and I think his result will be compromised if he uses that hand.

When claimant returned for a follow-up visit on August 18, 2000, Dr. Glowacki reported as follows:

Despite conservative treatment, [claimant] is failing with continued use of his hand at work given the option of only two-handed type of work. It is impossible without use of your thumb to do heavy lifting of a ladder. . . . Presently he is a danger to himself and his coworkers if he continues to lift ladders, climb ladders and do heavier type activity. Unfortunately I believe all this is moot as he is failing conservative treatment and likely is made worse by using his hand. I told him that we'll have to get an MRI to evaluate this area and probably have to perform surgery at this point. . . . We will see him back after the MRI regarding the surgical treatment.

Dr. Glowacki further noted in a patient work status report dated August 18, 2000, that claimant's injury was work related and that he did not know when claimant might return to work with full use of both hands. Dr. Glowacki also indicated in the "work limitations" portion of that report that claimant was to have "no use of injured hand" and added in the "comments" section that surgery would probably be necessary "due to [claimant's] constant using of hand."

- 5 -

Claimant testified he never had the MRI prescribed by Dr. Glowacki because employer did not authorize payment for it. He further testified that, each time he returned to work after seeing Dr. Glowacki, he gave the paperwork he had received from Dr. Glowacki regarding his work restrictions to employer's secretary. Claimant also testified he never told anyone at work that his work restrictions had been rescinded. He also stated there was a supervisor present every time he lifted or climbed a ladder at work and added he did not complain to Terry or his supervisors about his job assignments "because they knew" the work he was being given exceeded his work restrictions. He further stated that, even though he knew he was not supposed to use his left hand, he did so because he had a family and "[t]hat [was] the work that [employer] gave [him]."

Claimant continued working for employer through September 21, 2000, doing such work as painting offices with eight-foot-high ceilings, the outside of condominiums, the outside of a shed, the outside of houses, and the outside of a church. According to claimant, his work included carrying forty-foot ladders and climbing ladders to the second floor of houses. Claimant left employer in September to work for another painting company because he "did not feel good" and employer did not give him his normal hours due to his hurt hand. In his new job, as a supervisor, he did not lift or climb ladders or otherwise use his left hand when

- 6 -

painting.  He left that job three months later because his thumb and the cold weather were "bothering [him] too much."

Terry testified that he received all of Dr. Glowacki's notes regarding claimant's work restrictions and that he never received one releasing claimant from his work restrictions.  Terry further testified that claimant never told him he had been taken off work restrictions.  Terry stated that he instructed his foremen to provide claimant with light-duty work that did not require the use of ladders.  He also stated that, since he was unable to be at all the work sites, he depended on his foremen to carry out his orders, but acknowledged he did not know whether they did or not. He did not know, he admitted, whether claimant was ever required to lift or climb ladders or whether claimant ever did so.

Terry testified that, when he visited the work sites, he did not see claimant carrying any ladders but did see claimant lifting buckets with his left hand and working without his brace on after mid-August.  Terry stated claimant never complained to him that he was having problems with his left hand or that he could not do the jobs assigned to him.  In fact, he added, whenever he asked claimant how his hand was, claimant always replied his hand was fine and would move it around to show him.  Terry testified he ran out of light-duty work on September 5, 2000, and told claimant he would have to do full-duty work or be let go.  According to Terry, claimant said his hand was fine.

Claimant filed a claim for benefits dated September 21, 2000, seeking an award of medical benefits, temporary total disability benefits for the period June 17, 2000, through June 28, 2000, and temporary partial disability benefits for the period June 29, 2000, through September 21, 2000.

Following an evidentiary hearing held on January 18, 2001, the deputy commissioner awarded claimant temporary total disability benefits from June 17, 2000, through June 28, 2000, temporary partial disability benefits from June 29, 2000, through August 7, 2000, and medical benefits.  In reaching that decision, the deputy commissioner found claimant had willfully violated his doctor's work restrictions and that such violation was the cause of the aggravation of his compensable injury and the resulting disability after August 7, 2000.  The deputy commissioner reasoned that, although employer provided work to claimant that exceeded his work restrictions, the provision of unsuitable work was not, "by itself, a sufficient reason to absolve the claimant of his knowing violation of the clear medical restrictions."  Thus, the deputy commissioner concluded, claimant was not entitled to temporary partial disability benefits beyond August 7, 2000.

On review, the full commission amended the deputy commissioner's opinion by extending the temporary partial disability benefits to which claimant was entitled through September 21, 2000.  The commission reasoned that, because employer required claimant to work beyond his work restrictions,

- 8 -

it should have reasonably anticipated that such work would result in an aggravation to claimant's compensable injury. Accordingly, the commission concluded, employer was responsible for the full period of disability benefits sought by claimant.

This appeal by employer followed.

## II. ANALYSIS

Employer contends, on appeal, that claimant is not entitled to disability benefits beyond August 7, 2000, because he intentionally violated his physician's work restrictions. We disagree.

To prevail on his claim, claimant had to prove by a preponderance of the evidence that the disability for which he sought compensation was causally related to his June 9, 2000 compensable injury. See King's Market v. Porter, 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984); Rosello v. K-Mart Corp., 15 Va. App. 333, 335, 423 S.E.2d 214, 216 (1992). The commission's determination of causation is a finding of fact. American Filtrona Co. v. Hanford, 16 Va. App. 159, 165, 428 S.E.2d 511, 515 (1993). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

- 9 -

It is well settled in Virginia that an employee is entitled to receive compensation for the subsequent aggravation of a compensable injury if that aggravation is directly connected to the employee's original compensable injury by a chain of causation uninterrupted by "'an independent intervening cause attributable to [the employee's] own intentional conduct.'" Leadbetter, Inc. v. Penkalski, 21 Va. App. 427, 432, 464 S.E.2d 554, 556 (1995) (quoting 1 Arthur Larson, The Law of Workmen's Compensation § 13.00 (1994)). On the record of this case, we conclude, as did the commission, that claimant's performance of work that required him to exceed his work restrictions did not constitute an "independent" intervening cause. Employer knew the work it was giving claimant required him to exceed his work restrictions, and employer should have reasonably known that such work would predictably result in the aggravation of claimant's original compensable injury. Accordingly, claimant's conduct did not break the chain of causation directly connecting his compensable injury and the continuing aggravation of that injury.

The evidence presented in this case supports the commission's determination. After claimant was off work for more than a week following Dr. Glowacki's initial examination, employer told him to return to work. Terry testified that, throughout the period in question, he was aware of claimant's

work restrictions and that neither Dr. Glowacki nor claimant ever notified him that such restrictions had ended. Dr. Glowacki made it abundantly clear in his notes regarding claimant's work restrictions that claimant was to be given no work that would require him to use his left hand. Terry testified that, based on claimant's work restrictions, he instructed claimant's supervisors to provide claimant with only light-duty work that would not require him to lift or climb ladders. Terry further testified, however, that he was not always present at the work site where claimant was working and had to depend on his supervisors to carry out his instructions.

Claimant testified that, after his first day, the work assigned to him by employer was beyond his restrictions. According to claimant, the jobs he was given by employer required him to use his left hand to lift and climb ladders that were sixteen feet and longer in length. Claimant's testimony was uncontroverted.

In addition, Dr. Glowacki reported that claimant informed him that his employer was "still making him lift ladders and do things that obviously require two hands," despite Dr. Glowacki's note to employer saying claimant was to have "absolutely no use of his [left] hand." Dr. Glowacki further noted that claimant was "failing with [the] continued use of his hand at work given the option of only two-handed type of work." Dr. Glowacki also

- 11 -

noted in claimant's August 18, 2000 work status report that claimant's injury was work related.

As the commission correctly found, the continuing aggravation of claimant's original compensable injury was a result employer "should have reasonably expected."  It was the predictable consequence of employer's giving claimant work beyond his work restrictions.  Thus, having knowingly given claimant work that required him to exceed his work restrictions and that could reasonably be anticipated to result in the aggravation of claimant's compensable injury, employer may not escape having to pay for claimant's compensation benefits for an aggravation caused by such work simply by blaming claimant for engaging in work beyond his restrictions.  Employer must bear the responsibility of having knowingly given claimant work that required him to exceed his doctor's work restrictions.

Accordingly, we affirm the commission's decision and award.

<u>Affirmed.</u>