COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Felton and Kelsey
Argued at Salem, Virginia


CONSOLIDATED EQUIPMENT
 ERECTORS, INC. AND
 AMCOMP ASSURANCE CORPORATION

                                                          MEMORANDUM OPINION* BY
v.        Record No. 0772-03-3                          JUDGE D. ARTHUR KELSEY
                                                            NOVEMBER 12, 2003
GARY L. CUMBIE


FROM THE VIRIGINIA WORKERS' COMPENSATION COMMISSION

        S. Vernon Priddy III (Sands Anderson Marks & Miller, on brief), for
        appellants.

        Philip B. Baker (Sanzone & Baker, P.C., on brief), for appellee.


        Consolidated Equipment Erectors, Inc. and AmCOMP Assurance Corp. appeal a decision

by the Workers' Compensation Commission awarding Gary L. Cumbie temporary total disability

benefits for his injury by accident.  Finding that credible evidence supports the commission's

conclusions that Cumbie did not refuse selective employment and did not fail to reasonably

market his residual capacity, we affirm.

I.

        On appeal, "we view the evidence in the light most favorable to the prevailing party

before the commission." Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539

(2003); Tomes v. James City (County Of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315

(2002).

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Gary Cumbie injured his left foot on June 28, 2001, while working for Consolidated Equipment Erectors, Inc. on a job in New York. Dr. Scot Zindel, a podiatrist, examined Cumbie on July 10, 2001. He diagnosed a "re-aggravation of plantar fasciitis of the left foot" caused by Cumbie's work injury.

Though 45 years old at the time of his accident, Cumbie possessed limited intellectual capacity and had granted his mother, Joyce Hunt, power of attorney to conduct his business affairs.[1] On August 9, 2001, at the request of Cumbie's mother, Dr. Zindel sent a letter to Consolidated stating that he asked Cumbie to "remain off his foot, indefinitely until this condition resolves (which may take several months). I believe he would be willing to work if you could find him a sit-down position." Cumbie's mother testified that she spoke with Tamara Nuckols, Consolidated's workers' compensation representative, shortly after Dr. Zindel sent this letter. Nuckols said "the only position they had would be in the shop, but that would be on his feet. They didn't have any sit-down positions."

Nuckols later contacted Cumbie's mother and told her that Consolidated's insurance carrier, AmCOMP, had requested a second opinion. AmCOMP scheduled an appointment with another podiatrist, Dr. Peter F. Kelly, for October 30, 2001. After the appointment, Dr. Kelly sent a letter of medical necessity dated November 27, 2001, to AmCOMP for custom prescription molded orthotics, stating that Cumbie "is not able to walk without pain" and has been "diagnosed in exam and X-ray" with plantar fasciitis resulting from "an injury to his left foot at work on 6/28/01." Dr. Kelly's office notes contain no mention of work status, and Cumbie and his mother testified that he communicated no work release to them.

---

[1] The deputy commissioner noted that "Cumbie at least reached the eleventh grade," but that "he was not on the same education track as the typical high school student. Based on the evidence contained in Defendants' Exhibit 1, Cumbie was at least 21 years old while in the eleventh grade and his mother held a power-of-attorney for all financial matters." His mother controls his banking accounts and pays his bills.

AmCOMP sent a letter to Dr. Kelly requesting Cumbie's diagnosis and work status. Though the letter is dated October 26, 2001, Dr. Kelly testified that "it looks like it was faxed on December 17, 2001" and that it was "possible that [he] did not receive it 'til December." In his reply, Dr. Kelly responded to the question, "Is [Cumbie] capable of doing any type of work?" with an unqualified "yes."[2] Responding to a letter from AmCOMP's attorney on May 2, 2002, however, Dr. Kelly clarified that Cumbie "cannot tolerate prolonged weight-bearing. He is capable of working seated, however there is no option for this in his work." Dr. Kelly reiterated this work restriction during his deposition on May 7, 2002, stating Cumbie "was capable of doing any kind of sit-down work."

Between February 17 and February 20, 2002, after consulting an attorney, Cumbie filed with the Virginia Employment Commission (VEC) seeking restricted employment. He also filed with the Department of Rehabilitation Services. Responding to a VEC questionnaire on February 20, 2002, Dr. Kelly wrote that Cumbie was "totally unable to work" from October 30, 2001, to present, and that the earliest date Cumbie would be able to return to work was "to be determined." When directly asked if Cumbie was "currently able to perform any work?," Dr. Kelly answered "No."

On February 21, 2002, Cumbie received a certified letter from Consolidated instructing him to return to work the following Monday. The letter, apparently generated after Nuckols finally received a copy of Dr. Kelly's earlier unqualified response to AmCOMP's letter, stated:

---

[2] According to Nuckols, AmCOMP sent the same letter to Dr. Zindel. Dr. Zindel responded on January 3, 2002, writing that he had not seen Cumbie since July 10, 2001, and that he could "not comment on how his condition is progressing." However, he continued, "[i]n eighteen years of practice I have had less than five patients which needed to be totally off their feet from plantar fasciitis for any sustained duration." He reiterated his opinion from his August 9, 2001, letter that "Mr. Cumbie was capable of working light duty where he would not be required to lift heavy objects, he could sit the majority of the day and remain non weight bearing on his left foot."

> On several occasions when you and I spoke — I requested that you return to work in the shop and you expressed that you couldn't stand on your foot. Based on the information I received from Dr. Kelly, you are released to work.
>
> I am requesting that you return to work on or before February 25, 2002 at 8:00 a.m. to the shop.

The letter contained no mention of light duty.

In response to the letter, Cumbie's mother called Dr. Kelly and asked him about Cumbie's work status, telling him that Nuckols's letter "said that the doctor had released him to go to work. Dr. Kelly said, I don't recall any such thing. He said the last thing I recall is sending something saying it's to be determined about his work status." Cumbie and his mother obtained a copy of Dr. Kelly's VEC response and faxed it to Consolidated. Cumbie then called Consolidated and verified that they had received the VEC response.

Cumbie's mother testified that she had no conversations with Nuckols regarding work release or light duty in the six months between their August 2001 telephone conversation (regarding Dr. Zindel's letter) and Consolidated's February 19, 2002, letter (directing Cumbie to return to work). Cumbie stated that he occasionally saw Nuckols during this six-month period and she would ask when he was coming back to work. He "told her that I couldn't" return to work and stated that their conversations "didn't involve no [sic] light duty. There was no such thing."

Nuckols testified regarding her normal procedures when handling workers' compensation issues for Consolidated. She stated that when "an employee is released to return to work" she normally made a written request "that they return to work within their restrictions." However, though she contended that on several occasions she "had a conversation with either Mr. Cumbie or his mother about getting Mr. Cumbie back to work on light duty," she acknowledged that she

had no written record of any such conversations and no written correspondence from August 2001 to February 2002.

Cumbie filed a claim for temporary total disability benefits. Consolidated defended on the basis that Cumbie was "not totally disabled," that he refused "light-duty employment extended to him," and that he "failed to market his residual capacity." The deputy commissioner awarded benefits, finding none of the employer's arguments persuasive. On review, the full commission unanimously affirmed. Finding the medical records "confusing and contradictory," the commission held that Cumbie reasonably could not have been expected to know about his ability to return to light-duty work until Dr. Kelly's deposition on May 7, 2002, only a week prior to the deputy commissioner's hearing.

II.

In its role as factfinder, the commission "resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). When based on credible evidence, the commission's judgments are "conclusive and binding as to all questions of fact." Id. (quoting Code § 65.2-706(A)); see also Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999). Moreover, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

Our deference to the commission's factfinding applies "even though there is evidence in the record to support a contrary finding." S.P. Terry Co. v. Rubinos, 38 Va. App. 624, 632, 567 S.E.2d 584, 588 (2002) (citations omitted). When the factual record permits competing inferences, we defer to the commission's assessment of the "probative weight to be accorded evidence" — recognizing that the commission "is free to adopt that view 'which is most

consistent with reason and justice.'" Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (quoting C.D.S. Const. Servs. v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978)) (bracketed material omitted).

## A.

To support a finding of refusal of selective employment, "the record must disclose (1) a *bona fide* job offer suitable to the employee's capacity; (2) [a job offer that was] procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job." Atlas Plumbing and Mech., Inc. v. Lang, 38 Va. App. 509, 512, 566 S.E.2d 871, 872-73 (2002) (quoting James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 489 (1989)) (citations and internal quotation marks omitted). Once an employer shows a "*bona fide* offer of selective employment, 'the employee bears the burden of establishing justification for refusing such employment.'" Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 37, 542 S.E.2d 785, 788 (2001) (quoting Food Lion, Inc. v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993)). "To support a finding of justification to refuse suitable selective employment, 'the reasons advanced must be such that a reasonable person desirous of employment would have refused the offered work.'" Id. (citations omitted).

Credible evidence supports Cumbie's claim that Consolidated's February 19 letter was not a *bona fide* job offer suitable to his capacity, even if he had been aware that he could perform light-duty work. The February 19 letter from Consolidated — the only documented job offer Consolidated made to Cumbie — directs only that he return to work. It makes no mention of light duty. And apart from the February 19 letter, no documentary evidence suggests that Consolidated offered Cumbie light-duty employment. Nuckols testified that she repeatedly asked Cumbie to return to work prior to sending the February 19 letter, but she maintained no log or other documentation of the conversations, contrary to her normal practice as Consolidated's

workers' compensation representative. Cumbie admitted that he occasionally spoke with Nuckols, but he stated that he did not understand any of their conversations to contain an offer of light-duty employment. Cumbie's mother testified that after she asked Dr. Zindel to send his August 9, 2001, letter to Consolidated — stating that he asked Cumbie to "remain off his foot, indefinitely" and suggesting that Cumbie "would be willing to work if you could find him a sit down position" — Nuckols told her "the only position they had would be in the shop, but that would be on his feet. They didn't have any sit-down positions."

Given the work restrictions imposed by Drs. Kelly and Zindel, the conflicting testimony of Cumbie, his mother, and Nuckols, and the lack of documented offers for light-duty employment, we cannot say that the commission erred as a matter of law by finding Cumbie did not refuse a *bona fide* offer of selective employment suitable to his work capacity.

B.

An employee claiming entitlement to temporary total benefits must take reasonable measures to market his residual work capacity. Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987). "[W]hat is reasonable in a given case will depend upon all of the facts and surrounding circumstances." Id. at 467, 359 S.E.2d at 102. To determine reasonableness, the commission should consider: "(1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment." Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989).

Among other things, the sixth factor of the McGuinn test necessarily includes "consideration of the claimant's perception of his condition, his abilities, and his employability,

and of the basis for that perception," <u>Ridenhour v. Newport News</u>, 12 Va. App. 415, 418, 404 S.E.2d 89, 90-91 (1991), as well as the claimant's "[l]ack of mental capacity and education," <u>Bateman</u>, 4 Va. App. at 467, 359 S.E.2d at 102. "The commission, of course, determines which of these or other factors are more or less significant with regard to the particular case," <u>McGuinn</u>, 8 Va. App. at 272-73, 380 S.E.2d at 34-35, and we treat the commission's factual determinations as binding if supported by credible evidence, Code § 65.2-706(A); <u>Wall Street Deli, Inc. v. O'Brien</u>, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000).

In this case, credible evidence supports the commission's finding that Cumbie did not unreasonably fail to market his residual work capacity. In July 2001, Cumbie suffered a condition severe enough to prompt Dr. Zindel to later write that "[i]n eighteen years of practice I have had less than five patients which needed to be totally off their feet from plantar fasciitis for any sustained duration." In February 2002, Dr. Kelly informed the VEC that Cumbie was still "totally unable to work," that he had been unable to work since October 30, 2001, and that the earliest date Cumbie would be able to return to work was "to be determined." Nevertheless, Cumbie registered with the Department of Rehabilitation Services and with the VEC and at the hearing he stated a willingness to return to work at Consolidated within his job restrictions. Cumbie and his mother both testified that they understood that he was "unable to do any work." The basis for this perception was Dr. Kelly's written and oral comments throughout the course of his treatment.

On this topic, we find no fault with the commission considering Cumbie's intellectual limitations. Having attended eleventh grade special education classes at age twenty-one, Cumbie's limited comprehension skills no doubt affected his communication with Nuckols and Dr. Kelly. Along the same lines, we also reject appellants' claim that Cumbie's mother was his agent and thus her knowledge should have been imputed to him. Though this principle is

certainly true as an abstract proposition,[3] it has no application here for two reasons.  First, the commission did not find that the scope of this agency relationship was broad enough to impute specific notice to Cumbie.  And we find nothing in the record to compel such a conclusion as a matter of law.  Second, in any event, credible evidence supports his mother's contention that she too had been led by Dr. Kelly to believe that her son had no residual work capacity to market.  As a result, whether an agent for this specific purpose or not, Cumbie's mother did not possess imputable knowledge that would change the commission's award of temporary benefits in this case.

### III.

Because credible evidence supports the commission's factual findings on the selective employment and residual work capacity issues, we affirm.

Affirmed.

---

[3] "As a general rule, the knowledge of an agent is imputed to his principal." Allen Realty Corp. v. Holbert, 227 Va. 441, 446, 318 S.E.2d 592, 594 (1984); see also Yamada v. McLeod, 243 Va. 426, 433, 416 S.E.2d 222, 226 (1992); Infant C. v. Boy Scouts of America, Inc., 239 Va. 572, 578, 391 S.E.2d 322, 326 (1990).