COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Senior Judge Hodges
Argued at Richmond, Virginia


SODEXHO MARRIOTT SERVICES, INC. AND
 BIRMINGHAM FIRE INS. CO. OF
 PENNSYLVANIA/CRAWFORD & COMPANY
                                                        MEMORANDUM OPINION*
v.        Record No. 1389-03-2            BY JUDGE WILLIAM H. HODGES
                                                          DECEMBER 23, 2003
WANDA D. BROCKENBERRY


               FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Michael P. Del Bueno (Ralph L. Whitt, Jr.; Whitt & Associates, on
          briefs), for appellants.

          Zenobia J. Peoples for appellee.


       Sodexho Marriott Services, Inc. and its insurer (hereinafter referred to as "employer")

appeal a decision of the Workers' Compensation Commission awarding Wanda D. Brockenberry

temporary total disability (TTD) benefits commencing July 10, 2001 and continuing.  In its

opening brief, employer presents seven questions.  All questions concern whether the

commission erred in finding that Brockenberry proved (1) she sustained a change-in-condition

causally related to her compensable December 15, 1999 left knee injury and warranting the

resumption of TTD benefits beginning July 10, 2001, and (2) that she was entitled to TTD

benefits beginning July 10, 2001 and continuing.  Finding no error, we affirm the commission's

decision.

       On appeal, we view the evidence in the light most favorable to the prevailing party

below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In its role as fact finder, the commission "resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). When based on credible evidence, the commission's judgments are "conclusive and binding as to all questions of fact." Id. (quoting Code § 65.2-706(A)); see also Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999). Moreover, "the commission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). Our deference to the commission's fact finding applies "'even though there is evidence in the record to support a contrary finding.'" S.P. Terry Co. v. Rubinos, 38 Va. App. 624, 632, 567 S.E.2d 584, 588 (2002) (citation omitted). When the factual record permits competing inferences, we defer to the commission's assessment of the "probative weight to be accorded . . . evidence" - recognizing that the commission "is free to adopt that view 'which is most consistent with reason and justice.'" Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (quoting C.D.S. Const. Servs. v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978)).

### Background

Brockenberry sustained an injury to her left knee on July 22, 1997, when she slipped and fell on a wet floor at a Wal-Mart store.[1] Dr. Dawson treated Brockenberry for that injury. He prescribed a cast, crutches, and anti-inflammatory medications. X-rays taken at that time were reported as normal except for a "patellar spur." A November 14, 1997 MRI showed "[m]inimal joint effusion" and "possible very minimal scar or soft tissue swelling anteriomedially." That MRI did not show any ligamentous tears, fractures, or dislocations. In addition, the cartilages

---

[1] Brockenberry testified that the accident occurred on July 22, 1997, although Dr. Eric Dawson's records indicate it occurred on July 24, 1997.

were intact. Dr. Dawson recommended continued treatment with anti-inflammatory medication and an exercise regimen. On December 23, 1997, Dr. Michael Proctor, Dr. Dawson's associate, noted that Brockenberry still had some stiffness and tightness in her knee, but she was able to perform most of her duties and activities. Dr. Proctor opined that Brockenberry's prognosis was good and instructed her to see him on an as needed basis. On March 11, 1998, Dr. Dawson noted that Brockenberry continued to have patellar tracking, and tenderness to the anterior joint line. He recommended that she continue to use ice, elevation, and medication.

On December 15, 1999, Brockenberry slipped and fell, injuring her left knee, while working as a banquet waitress for employer. The record contains no evidence that Brockenberry sought any medical treatment for her left knee condition between March 12, 1998 and the December 15, 1999 compensable accident. Moreover, she did not undergo any surgery on her left knee prior to the December 15, 1999 compensable injury by accident.

On June 22, 2000, Brockenberry filed an application seeking compensation benefits related to the December 15, 1999 accident.

In a May 22, 2001 opinion, Deputy Commissioner Tabb held that Brockenberry proved she sustained a new injury to her left knee and hand as a result of the December 15, 1999 fall, which arose out of and in the course of her employment. The deputy commissioner also held that Brockenberry was entitled to an award of TTD benefits from December 15 through 17, 1999 and March 21, 2000 through August 16, 2000, as a result of the December 15, 1999 compensable left knee injury.

In an opinion dated November 14, 2001, the full commission affirmed the deputy commissioner's decision. The parties did not appeal that decision to this Court and, therefore, it is final and binding.

On July 16, 2001, Brockenberry filed a change-in-condition application seeking a resumption of TTD benefits beginning June 6, 2001 and continuing, as a result of her December 15, 1999 compensable left knee injury.  Employer defended against that application on the grounds that Brockenberry had not sustained a compensable change in condition; that there was no causal connection between her December 15, 1999 compensable left knee injury and her current disability and medical treatment; and that the medical evidence did not support the period of disability alleged by Brockenberry.

### I.  Change in Condition as of July 10, 2001/ Causal Connection

In ruling that Brockenberry proved she sustained a change in condition in July 2001, causally connected to her compensable December 15, 1999 left knee injury and warranting a resumption of TTD benefits, the commission found as follows:

> The evidence reflects that [Brockenberry] sustained a significant injury to her left knee in July of 1997 and that she suffered from an arthritic condition in her left knee before her industrial accident.  However, the evidence also shows that [she] did not seek medical attention for her knee from March of 1998 until her work-related injury on December 15, 1999-a period of more that a year and a half.  In addition, the evidence shows that [Brockenberry] has continued to complain of pain in her left knee since her 1999 fall and that she has continued to seek medical attention and treatment for that pain.  Furthermore, [she] developed a problem with her left knee buckling after her accident on December 15, 1999, that she did not have before her industrial accident.

> Because [Brockenberry's] symptoms persisted and because she reported that her leg was giving way, Dr. [Robert S.] Adelaar performed another arthroscopic examination of [Brockenberry's] knee in July of 2001 as a result of which [she] became totally incapacitated.  Based upon these facts, we find that [Brockenberry's] incapacitation as of July of 2001 was caused, at least in part, by the aggravation of her left knee condition following her fall in December of 1999.  We therefore agree with the Deputy Commissioner that [Brockenberry] established a change of condition warranting the resumption of [TTD] benefits.

"[C]hanges [in condition] include 'progression, deterioration, or aggravation of the compensable condition . . . appearance of new or more serious features [and] failure to recover within the time originally predicted . . . .'" Armstrong Furniture v. Elder, 4 Va. App. 238, 243, 356 S.E.2d 614, 616 (1987) (quoting 3 A. Larson, The Law of Workmen's Compensation § 81.31(a) (1983)).

"[W]hen an employee files an application for reinstatement of disability benefits, two questions arise: (1) has there been a change in the employee's capacity to work; (2) if so, is the change due to a condition causally connected with the injury originally compensated." King's Market v. Porter, 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984).

Brockenberry's testimony, along with Dr. Adelaar's medical reports beginning June 6, 2001, provide credible evidence to support the commission's finding that Brockenberry sustained a change in condition as of July 10, 2001, causally related to her December 15, 1999 compensable left knee injury and warranting a resumption of TTD benefits.

Brockenberry testified that after Dr. Adelaar performed arthroscopic surgery on her left knee on March 21, 2000, her left leg started collapsing. On May 1, 2000, Dr. Adelaar noted Brockenberry's continuing complaints of pain and that her knee was giving way. He released her to light-duty as of May 3, 2000. However, on July 3, 2000, Dr. Adelaar noted buckling of Brockenberry's left knee and ordered an MRI. An August 7, 2000 MRI of her left knee showed mild tendinitis of the distal quadriceps tendon anteriorly. On March 28, 2001, Dr. Adelaar noted left thigh numbness and left medial knee pain, discharged Brockenberry from his care and released her to light duty. He noted that he would see her as needed.

On June 6, 2001, Brockenberry returned to Dr. Adelaar, who noted that she was using a Don Joy brace given to her by Dr. Gazala. Dr. Adelaar's examination revealed that Brockenberry's quadriceps had atrophied 1.5 centimeters on the left and 1.5 centimeters in the

calf and that her leg was giving way when she walked. Dr. Adelaar also noted that Brockenberry had a minimal draw test and needed another arthroscopic examination because of her continued complaints, in order to see if there were any changes.

In a July 10, 2001 disability slip, Dr. Adelaar opined that Brockenberry would be out of work for knee surgery from June 6, 2001 through July 24, 2001. Dr. Adelaar's July 12, 2001 operative report shows that he performed a debridement of the patella and medial plica resection. The July 12, 2001 surgery caused Brockenberry to be totally disabled from work.

Based upon this record and the lack of any medical treatment for Brockenberry's left knee condition between March 12, 1998 and the December 15, 1999 compensable accident, the commission could reasonably infer that Brockenberry substantially recovered from her November 1997 left knee injury before the December 15, 1999 compensable accident. Thus, based upon Brockenberry's testimony and Dr. Adelaar's medical records, the commission could infer that Brockenberry's need for surgery in July 2001 and the change in her capacity to work as of July 10, 2001, were causally related, at least in part, to an aggravation of her compensable December 15, 1999 left knee injury. "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988).

## II. Period of TTD Benefits

In ruling that Brockenberry proved she was entitled to an award of TTD benefits beginning July 10, 2001 and continuing, as a result of her compensable change in condition, the commission found as follows:

> Dr. Dawson opined that [Brockenberry] has remained totally incapacitated due to her knee condition since she began seeing him in October of 2001. He also indicated in his letter dated May 28, 2002, that [Brockenberry's] current knee condition was caused by

- 6 -

two injuries-her falls in 1997 and 1999. In contrast, Dr. Adelaar opined in his deposition that [Brockenberry] was able to perform light duty employment when he last saw her on October 26, 2001, as long as she is not required to perform heavy lifting or full squatting. Dr. Johnson agrees that [Brockenberry] is physically able to work although he does not believe she should engage in deep squats or lifting more than fifty pounds.

Dr. Adelaar did not, however, state in his office note from his final examination of [Brockenberry] on October 26, 2001, that [she] was able to return to work, and [Brockenberry] testified that he told her she was free to seek a second opinion at that time. [Brockenberry] did this and was told by Dr. Dawson just four days later that she remained totally incapacitated. Thus, we conclude that it was not unreasonable for [Brockenberry] to accept Dr. Dawson's assessment regarding her total incapacity.

We also conclude that the Deputy Commissioner found [Brockenberry's] description of her pain and physical abilities at the time of her visit to Dr. Dawson on October 30, 2001, to be implicitly credible and we defer to him in this regard. Dr. Dawson based his opinion regarding [Brockenberry's] physical capacity at the time of her first visit to him in 2001, upon her description of pain as well as his review of Dr. Adelaar's records and his personal understanding of [Brockenberry's] condition as of 1998 when he last examined her in connection with her 1997 injury. Because Dr. Dawson has personal knowledge of [Brockenberry's] knee condition prior to her fall in 1999 and because he continues to treat [Brockenberry] and is more aware of her current condition than either Dr. Adelaar, who last saw her in October of 2001, or Dr. Johnson, who examined [Brockenberry] only once, we agree with the Deputy Commissioner that Dr. Dawson's opinion regarding [Brockenberry's] physical capacity is more persuasive than Drs. Adelaar and Johnson.

Dr. Dawson's medical records and opinions provide credible evidence to support the commission's finding that Brockenberry proved that she had been totally disabled since July 10, 2001. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). Moreover, "[q]uestions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

The record shows that on July 24, 2001, Dr. Adelaar ordered Brockenberry to start physical therapy and a disability note of that same date excused Brockenberry from work until she returned to see Dr. Adelaar in one month. On October 26, 2001, Dr. Adelaar noted that Brockenberry had continuing pain in her left knee. He indicated that the arthroscopic surgery revealed a softening of the cartilage underneath her kneecap. He noted she had good range of motion, but that her quadriceps function was not good. He opined that she had reached maximum medical improvement under his care and recommended an exercise program, possible injection, and anti-inflammatory medication. He did not comment at that time on her ability to work.

On October 30, 2001, Dr. Dawson examined Brockenberry for pain in her left knee. He recommended conservative treatment and totally disabled her from work due to her left knee injury from October 29, 2001 through November 14, 2001. On November 14, 2001, Dr. Dawson examined Brockenberry, giving her a steroid injection and recommending that she continue with anti-inflammatories and a bike exercise regimen. He totally disabled her from work from November 14, 2001 through December 5, 2001. On December 5, 2001, Dr. Dawson examined Brockenberry, noting that she "has had significant aggravation regarding the knee." He noted that "she is still having pain and discomfort with patello femoral crepitus to tracking at 25 and 45 degrees in the main." At that time, Dr. Dawson recommended that Brockenberry continue with regular anti-inflammatories, ice, and exercise, increasing the duration and time of the exercises. He totally disabled her from work from December 5, 2001 through January 8, 2002. Additional disability certificates signed by Dr. Dawson dated January 29, 2002, February 27, 2002, and March 19, 2002, totally disabled Brockenberry from work through April 20, 2002, due to her knee injury.

Dr. Adelaar's medical records up through October 26, 2001 and Dr. Dawson's medical records provide credible evidence to support the commission's conclusion that Brockenberry proved that she was totally disabled from work beginning July 10, 2001 and continuing, as of the date of the hearing.

Employer points out that the record contains no contemporaneous office notes to support Dr. Dawson's January 29, 2002, February 27, 2002, and March 19, 2002 disability certificates. However, we note that in Dr. Dawson's May 28, 2002 letter to Brockenberry's counsel, written after he reviewed Dr. Johnson's IME report, Dr. Dawson indicated that he examined Brockenberry on February 27, 2002 and March 19, 2002 and that he continued to treat her. In addition, Brockenberry testified that Dr. Dawson continued to provide her treatment as of the March 22, 2002 hearing. Based upon Dr. Dawson's May 28, 2002 letter and Brockenberry's testimony, the commission, as fact finder, could reasonably infer that Dr. Dawson continued to treat and examine Brockenberry through the date of the hearing.[2]

In its reply brief, employer argues that Dr. Dawson's March 22, 2002 Attending Physician's Report, in which he indicated that Brockenberry could perform light semi-sedentary work as of March 22, 2002, was impermissibly ignored by the deputy commissioner and the commission as they did not mention the attending physician's report in their respective opinions.[3] Employer argues that because the March 22, 2002 Attending Physician's Report conflicts with Dr. Dawson's March 19, 2002 disability certificate and because it came after Dr. Dawson's March 19, 2002 disability certificate, it was the last evidence from Dr. Dawson

_____

[2] The hearing in this case occurred on March 22, 2002; however, the record was held open solely for the purpose of receiving Dr. Johnson's IME report and a response from Dr. Dawson. The commission received those documents on June 4, 2002, and the record was closed on that date.

[3] Employer did not mention or discuss Dr. Dawson's March 22, 2002 Attending Physician's Report in its opening brief.

concerning Brockenberry's disability from work and, therefore, the commission erred in awarding Brockenberry TTD benefits after March 21, 2002. Employer did not provide the commission with an opportunity to consider this argument. Employer did not raise this argument in its written statement filed in support of its request for review of the deputy commissioner's decision nor did employer assert this argument to the commission in a motion for rehearing or motion for reconsideration after the commission rendered its April 30, 2003 opinion. Accordingly, we will not consider it for the first time on appeal. See Rule 5A:18; Williams v. Gloucester Sheriff's Dept., 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003) ("Rule 5A:18 . . . is based on the principle that a litigant has the responsibility to afford a court the opportunity to consider and correct a perceived error before such error is brought to the appellate court for review.") .

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>